389 A.2d 553

**PENNSYLVANIA LABOR RELATIONS BOARD, Appellant,**

v.

**ALTOONA AREA SCHOOL DISTRICT and Altoona Area School Service Personnel Association, PSEA/NEA, Appellees.**

Supreme Court of Pennsylvania.

Argued March 7, 1977.

Decided July 14, 1978.

Forest N. Myers, Asst. Atty. Gen., Raymond W. Cromer, Harrisburg, for appellant.

Thomas H. Lane, John D. Thrush, Morgan, Lewis & Bockius, Harrisburg, for appellee.

Daniel R. Delaney, Pittsburgh, for Altoona Area School Service Personnel Association, PSEA/NEA.

Before EAGEN, C. J., and O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

## OPINION OF THE COURT

MANDERINO, Justice.

On October 1, 1971, appellant Pennsylvania Labor Relations Board (Board) certified the Altoona Area School Ser-

vice Personnel Association (Association) as the exclusive representative of a unit comprised of appellee Altoona Area School District's secretarial, supportive, maintenance and cafeteria employes, excluding among others "all confidential employes." Approximately one year later, the Association requested the Board to clarify its description of the unit with regard to (1) four secretaries, the secretary to the high school principal and the secretaries to three junior high school principals; (2) the School District's payroll clerk; and (3) other employes whose status is no longer in question.

Following a hearing before a Board examiner, the Board determined that the four secretaries and the payroll clerk were not "confidential employes" as defined in section 301(13) of the Public Employe Relations Act (PERA), 43 P.S. § 1101.301(13) (Supp. 1978–79). The Board therefore directed that the five employes be included in the bargaining unit.

The Court of Common Pleas of Blair County reversed the Board, ordering that secretaries to principals and the payroll clerk be excluded from the bargaining unit because these employes were confidential employes as defined by the PERA. The Commonwealth Court affirmed the Court of Common Pleas, agreeing with that court that the Board erred in adopting the National Labor Relations Board's definition of confidential employe when the PERA contained its own definition of this class of employe. *Pennsylvania Labor Relations Board v. Altoona Area School District,* 23 Pa.Cmwlth. 445, 352 A.2d 560 (1976). We granted the Board's request for allocatur.

The Public Employe Relations Act, which grants public employes the right to organize and bargain with their public employer, defines "public employe" so as not to include "confidential employes." *See* 43 P.S. § 1101.301(2) (Supp. 1978–79). The Act goes on to define confidential employe.

" 'Confidential employe' shall mean any employe who works: (i) in the personnel offices of a public employer and has access to information subject to use by the public employer in collective bargaining; or (ii) in a close continuing relationship with public officers or representatives

associated with collective bargaining on behalf of the employer."

*Id.* § 1101.301(13).

The above provision defines two categories of confidential employes: employes who work closely with public officers or representatives "associated with collective bargaining" on behalf of the public employer, and employes who work in the employers' "personnel offices" and "have access to information subject to use by the public employer in collective bargaining." The policy underlying the exclusion from bargaining units of confidential employes is apparent: It is a recognition of the need to balance the right of employes to be represented with the right of the employer to formulate its labor policies with the assistance of employes not represented by the union with which it deals.

Pennsylvania, in enacting the PERA in 1970, was not the first state to exclude from bargaining units confidential employes. Although the breadth of the exclusion varies from state to state, the various statutes generally exclude employes who act in a confidential capacity to managerial or other employer personnel and have access to information used by those personnel in collective bargaining. *See, e. g.,* 9 N.Y.Civ.Serv.Law § 201–7(a) (McKinney Consol. Supp. 1977–78); Wis.Stat.Ann. § 111.81(15) (1974); 2 Haw.Rev. Stat. § 89–6(c) (1976). *See generally* Shaw & Clark, *Determination of Appropriate Bargaining Units in the Public Sector: Legal and Practical Problems,* 51 Oreg.L.Rev. 152, 171 & n. 126 (1971).

The National Labor Relations Act does not contain an exclusion for confidential employes. The National Labor Relations Board (NLRB), however, has long excluded from bargaining units employes deemed to be confidential. In *B. F. Goodrich Co.,* 115 NLRB No. 103, 37 LRRM 1383 (1956), after years of effort to determine the proper scope of the exclusion, the Board settled on a definition of confidential employe, the term to embrace "only those employees who assist and act in a confidential capacity to persons who formulate, determine and effectuate management policies in the field of labor relations." *Id.* at ——, 37 LRRM at 1384.

The Board has adhered to this "narrow test of confidential status" from 1956 to the present time. *Swank, Inc.,* 231 NLRB No. 14, 95 LRRM 1513, 1515 (1977). *See also Bulletin Co.,* 226 NLRB No. 53, 94 LRRM 1259, 1277 (1976); *Taft Broadcasting Co.,* 226 NLRB No. 87, 94 LRRM 1089, 1092–93 (1976).

The Pennsylvania Labor Relations Board, in an effort to interpret confidential employe as the term appeared in the PERA, also took a number of years to settle on a definition that would best accommodate the interests of the employer in protecting his bargaining position and the employe in bargaining collectively. Initially proceeding on a case-by-case basis, in the first three years of PERA's existence the PLRB was "called on many times to interpret the meaning of [the section defining confidential employe]." *West Shore School District,* 3 Pa.Pub.Emp.Rep. 1, 2 (1973). Up until its decision in *West Shore,* the PLRB, although not expressly adopting the NLRB's definition of confidential employe, "leaned on the expertise and long experience of the National Labor Board for the philosophy to be applied to the interpretation of confidential employes." *Id. See Churchill Area School District,* 2 Pa.Pub.Emp.Rep. 26 (1972). In *West Shore,* the PLRB decided that the NLRB definition of confidential employe best effectuated the philosophy and legislative intent of § 1101.301(13) of the PERA, and therefore declared that a confidential employe under the PERA is

"one who sits or acts in a confidential capacity to a person who formulates labor relations policy, or who makes the eventual determination of labor relations policy, or who effectuates and sees to it that management decision[s] on labor relations policy are carried out, and that such effectuation is not in terms of the physical carrying out of such labor relations policy, but of seeing to it that such physical labor relations policy is carried out."

3 Pa.Pub.Emp.Rep. at 2.

In short, the PLRB's narrow test of confidential employe status is whether or not the employe acts in a confidential capacity to a person who formulates, determines or effectuates management policies in the field of labor relations.

Before examining the status and responsibilities of the four school principal secretaries, the payroll clerk, and the persons with whom these five employes are associated, we must consider appellee's argument that the Board erred when it applied the federal definition of confidential employe to the four secretaries, to the exclusion of the PERA definition. We find the argument to be without merit.

Section 1101.301(13)(ii) defines confidential employe in broad terms. A confidential employe is one who works "in a close continuing relationship with public officers or representatives *associated with collective bargaining* on behalf of the employer." (Emphasis added.) The PLRB, in giving substance to the general term "associated with" collective bargaining, determined that the underlying policy of the PERA is best served by formulating a narrow test for confidential status, excluding from bargaining units only those employes closely associated with managerial personnel who actually participate in the collective bargaining in behalf of the public employer.

■■ "Associated with" must be interpreted within the context of the statute in which it appears. The PERA was enacted to accord public employes the right to organize and bargain with their employers, 43 P.S. § 1101.101. This right, whether it be in the public or private sector, is "the very essence of any viable labor relations system." Edwards, *The Developing Labor Relations Law in the Public Sector,* 10 Duq.L.Rev. 357, 365 (1972). Since § 1101.301(13) denies to certain employes this fundamental right, the Board could properly determine that "associated with" was best read so as to exclude only those employes whose inclusion in the bargaining unit would seriously impair the public employer's ability to bargain on a fair and equal footing with the union. It was not the purpose of § 1101.301(13)(ii) to exclude every employe even remotely "associated with" collective bargaining, from the janitorial employes who clean up after negotiation sessions to the employes who keep the negotiators supplied with coffee, drinking water and sharpened pencils. To the contrary, when we consider the purpose of the PERA, it becomes clear that the section is far more amenable to the

interpretation given it by the Board—limiting the exclusion to those employers who work in a close continual relationship with managerial employes who actually formulate, determine or effectuate the employer's labor policy.

We cannot agree with the School District's argument that the Pennsylvania Labor Relations Board impermissibly used the NLRB definition of confidential employe. If the NLRB definition was somehow in derogation of the PERA definition of confidential employe, there might be merit to the School District's argument, for under those circumstances we would look askance at the Board's reliance on federal experience. In excluding confidential employes from bargaining units, however, the considerations underlying the federal rule for the private sector and the PERA definition for the public sector are identical. In such a case, we have acknowledged the relevance of federal precedent as helpful in resolving questions under the PERA. *Costigan v. Philadelphia Finance Dept. Employees Local 696, AFL–CIO,* 462 Pa. 425, 432–33 n. 7, 341 A.2d 456, 460 n. 7 (1975). *Borough of Wilkinsburg v. Sanitation Dept.,* 463 Pa. 521, 525 n. 5, 345 A.2d 641, 643 n. 5 (1975). We therefore cannot conclude that the Board ignored the PERA definition of confidential employe when it looked to federal "expertise and experience" to formulate a workable definition of that term as it appears in the Pennsylvania statute.

Applying the Board's definition to the four secretaries, we find no error in the Board's determination that these individuals were not confidential employes within the meaning of § 1101.301(13)(ii). The Board found that the principals for whom the secretaries worked were not part of the school district's bargaining team. Testimony adduced at the hearing revealed that the principals were, on infrequent occasions, consulted as to the effect a certain contract provision would have on them as principals. This tenuous association with the collective bargaining process is hardly the "formulation, determination, or effectuation of labor policy" envisaged by the Board's definition of a confidential employe. We agree with the Board that the drafters of the PERA did not intend to deny the benefits of public employe

status to every employe however tangentially connected to collective bargaining negotiations. One secretary to a junior high school principal, whom the parties agree had a relationship to the principal typical of all four secretaries, testified that in ten years employment with the school district she typed materials relative to collective bargaining on only two occasions. Both were one or two page memoranda. We agree with the Board that to deny these secretaries the salutary effects of public employe status based on such a minimal connection with collective bargaining would distort the legislative intent to accord employes in the public sector the right to organize and have the benefit of union representation. *See* 43 P.S. § 1101.101 (statement of policy).

The School District argues that the principals are "associated with" collective bargaining within the meaning of section 1101.301(13) because they are involved in handling grievances at the first level. We do not agree. The Board properly concluded that the handling of grievances is not part of the "formulation, determination, or effectuation" of an employer's labor policy. The only possible connection these secretaries might have had with the handling of grievances would be the typing of correspondence in regard to the grievance process. The NLRB experience is again helpful. It has consistently held that the typing of materials relating to grievances is not sufficient to render an employe confidential, on the rationale that working with a person who handles grievances is not working with someone who is responsible for the formulation or effectuation of management's labor relations policy. *ITT Grinnell Corp.*, 212 NLRB No. 105, 87 LRRM 1404 (1974); *Weyerhaeuser Co.*, 173 NLRB 1170, 69 LRRM 1553 (1968). Moreover, the secretary whose relationship with her principal was typical of the four testified that in her ten years of employment, she had never typed anything having to do with a grievance. We agree with the Board that under these facts, there is no reason to exclude these secretaries based on their own or their superiors' involvement with the handling of grievances. *Compare National Cement Co.*, 228 NLRB No. 125, 94 LRRM 1732 (1977); *ITT Grinnell Corp., supra.*

158

■ Finally, as regards the four secretaries, the School District argues that these secretaries fall under § 1101.-301(13)(i) because the principals' offices in which they work are "personnel offices of a public employer" and the secretaries have access to information used in collective bargaining. The Board argues that the secretaries do not fall within subsection (i) because they do not work in the employer's personnel offices. We agree with the Board. Both the principal of one of the five schools and one of the secretaries testified that the School District's personnel records are kept at the school's Central Administration Office, not in the various principals' offices. The School District's argument is therefore without merit.

■ There remains the issue concerning the payroll clerk. Subsection (i) of § 1101.301(13) provides that a confidential employee is one

"who works in the personnel offices of a public employer and has access to information subject to use by the public employer in collective bargaining."

The Board interpreted the above section as not applicable to one who has access to information readily available to the public, including an employe's association. According to the Board, an employe would fall under the exception only if that employe had access to information which was not available to the public. We agree. The exception would make no sense if it deprived an employe of rights under the Act simply because that employe has access to information which all members of the public are entitled to obtain. We must remember that the term being defined is "confidential employe." Interpreting subsection (i) with that in mind, there is little doubt that the information to which the employe has access must be confidential information to which the public does not have access.

■ In interpreting the phrase "access to information" to mean access to confidential information or information not available to the employe association, the Board's reading of the subsection is in harmony with the purpose

and policy of § 1101.301(13)—to exclude from collective bargaining only those employes whose inclusion in the bargaining unit would prevent the employer from bargaining with the union on even terms. Words in a statute must be interpreted not in a vacuum but by resort to the considerations which gave rise to the statute's enactment. In light of the policy underlying § 1101.301(13), it would make no sense to deny this payroll clerk public employe status on the ground she was a confidential employe if the only information to which she had access was readily available to the employe association. An employe not privy to anything confidential should not be deemed a "confidential employe" based on an interpretation of the statute divorced from the purpose or policy underpinning the statute.

The NLRB, with years of experience in determining the status of employes who have access to personnel records, also requires that the information to which the employe has access be confidential. The NLRB has expressly rejected the argument that access to personnel files, unless it involves access to confidential information, excludes an employe from the bargaining unit. *Taft Broadcasting Co.*, 226 NLRB No. 87, 94 LRRM 1089 (1976). *See also National Cement Co.*, 228 NLRB No. 125, 94 LRRM 1732 (1977).

The School District argues that the Board erred in concluding that the payroll clerk did not fall within subsection (i) because the Board's legal conclusion did not follow from one of its findings of fact. That finding of fact was as follows:

"That the School District employs a payroll clerk who maintains an office in the Employer's central personnel office who prepares the payroll and has access to information used by the public employer in the collective bargaining process."

The above finding of fact, however, does not state that the employe has access to any confidential information. A reading of the Board's "Discussion" section clearly indicates that the findings meant only that the employe had access to information used by the employer but also available to the public.

In spite of our agreement with the Board that an employe must have access to confidential information in order to qualify as a confidential employe, the findings by the Board are not adequate to decide whether the payroll clerk falls within the confidential employe exception. The Board found that "the bulk" of the information to which the payroll clerk had access was also available to the public. That finding is far too imprecise for us to determine the legal status of the payroll clerk. The record is likewise of little help in determining to what extent, if any, the payroll clerk had access to confidential information, for the issue of the public availability or nonavailability of the information to which the payroll clerk had access was neither directly addressed nor adequately explored at the Board hearing. Under these circumstances, the matter must be remanded to the Board for consideration, consistent with this opinion, of the status of the payroll clerk.

The order of the Commonwealth Court and the order of the Court of Common Pleas is reversed as to the four secretaries and the order of the Board is reinstated. The order of the Commonwealth Court, the Court of Common Pleas, and the Board as to the payroll clerk are vacated and the matter remanded to the Board for proceedings consistent with this opinion.

NIX, J., concurred in the result.