489 A.2d 1325

**COUNTY OF LEHIGH, Appellant,**

v.

**COMMONWEALTH of Pennsylvania, PENNSYLVANIA LABOR RELATIONS BOARD, Appellee,**

**and**

**The Pennsylvania Social Services Union, Local 668, Service Employees International Union, Intervenor-Appellee.**

Supreme Court of Pennsylvania.

Argued Oct. 22, 1984.

Decided April 3, 1985.

Larsen, J., filed concurring opinion.

Zappala, J., filed dissenting opinion.

Wilbur C. Creveling, Asst. County Sol., for appellant.

James L. Crawford, Harrisburg, for PLRB.

Kathryn S. MacNett, Harrisburg, Bruce M. Ludwig, Philadelphia, for PA Social Ser. Union.

Before NIX, C.J., and LARSEN, FLAHERTY, McDERMOTT, HUTCHINSON, ZAPPALA and PAPADAKOS, JJ.

## OPINION

NIX, Chief Justice.

This is an appeal from an order of the Commonwealth Court affirming a final order of the Pennsylvania Labor Relations Board ("Board") which certified the Pennsylvania Social Services Union ("Union") as the exclusive representative of a collective bargaining unit of Lehigh County ("County") court-appointed employees for purposes of the Public Employe Relations Act ("PERA"), Act of July 23, 1970, P.L. 563, No. 195, *as amended,* 43 P.S. §§ 1101.101 *et seq.* (Supp.1984–85). 76 Pa.Cmwlth. 641, 464 A.2d 699. Pursuant to the Board's order the personal secretaries to the judges of the Lehigh County Court of Common Pleas were included in the bargaining unit. The sole issue to be resolved in this appeal is whether such judicial secretaries are "confidential employes" under section 301 of PERA, 43 P.S. § 1101.301 and thereby ineligible for membership in a public employee collective bargaining unit.[1]

### I.

The proceedings in this case commenced when the Union filed a petition for representation with the Board on October 10, 1978. The Board conducted hearings on the petition during which the Honorable Martin J. Coyne, President Judge of the Court of Common Pleas of Lehigh County, testified extensively regarding the various job classifications under consideration for inclusion in the employee unit.

---

1. This Court is vested with jurisdiction pursuant to 42 Pa.C.S. § 724(a).

The Union and the County were prepared to stipulate that the judges' personal secretaries were confidential employees but presented Judge Coyne's testimony on that issue at the request of the Board. After the hearings the Board directed that an election be held among the court-appointed employees including the judicial secretaries. The employees cast sixty (60) votes in favor of the Union and forty-one (41) for no representation. Seven (7) ballots were challenged and never opened. With a majority of the unit voting in favor of the Union, the Board certified it as the exclusive collective bargaining representative of the County's court-appointed professional and non-professional employees. Judicial secretaries were included in that employee unit.

The County filed exceptions to the Board's certification order, complaining in part that the Board had improperly concluded that the judicial secretaries were not "confidential employes." The Board rejected that contention and issued a final order of certification. The County then filed a petition for review in the Court of Common Pleas. Upon application by the Union this Court transferred the matter to the Commonwealth Court, which affirmed the Board. We granted the County's petition for allowance of appeal and, by order dated January 25, 1984, limited the appeal to the issue of whether judicial secretaries are "confidential employes" under PERA.

## II.

By enacting PERA the legislature, in an effort to promote orderly and constructive relationships between public employers and their employees, authorized public employees to organize and required public employers to recognize and bargain with the employees' representatives. This Court has upheld the constitutionality of PERA as applied to court-appointed employees. *Commonwealth ex rel. Bradley v. Pennsylvania Labor Relations Board,* 479 Pa. 440, 388 A.2d 736 (1978).

The right to organize and bargain collectively conferred upon employees in the public sector by PERA is limited, however, by PERA's definition of "public employe." "Confidential employes" are specifically excluded from that definition. 43 P.S. § 1101.301(2). "Confidential employe" is defined as "any employe who works: (i) in the personnel offices of a public employer and has access to information subject to use by the public employer in collective bargaining; or (ii) in a close continuing relationship with public officers or representatives associated with collective bargaining on behalf of the employer." 43 P.S. § 1101.301(13). Since "confidential employes" are not "public employes" for purposes of PERA, they may not be included in a collective bargaining unit.

■ The policy underlying this exclusion of "confidential employes" is the "recognition of the need to balance the right of employes to be represented with the right of the employer to formulate its labor policies with the assistance of employes not represented by the union with which it deals." *Pennsylvania Labor Relations Board v. Altoona Area School District*, 480 Pa. 148, 153, 389 A.2d 553, 556 (1978). It is therefore appropriate to give the statutory definition a narrow interpretation. The test of "confidential employe" status under the second prong of the definition, which was developed by the Board and has been adopted by this Court is "whether or not the employee acts in a confidential capacity to a person who formulates, determines or affectuates management policies in the field of labor relations." *Id.*, 480 Pa. at 154, 389 A.2d at 556, *quoting B.F. Goodrich Co.*, 115 NLRB No. 103, 37 LRRM 1383, 1384 (1956).

The County maintains that judicial secretaries fall within this second category of "confidential employes." Since the Board concedes, as it must, that personal judicial secretaries have a "close continuing relationship" with their respective judges, our decision turns on whether those judges formulate, determine or effectuate managerial labor policies.

## III.

 The power to appoint necessary personnel is inherent in the judicial power. *Sweet v. Pennsylvania Labor Relations Board (Sweet I)*, 457 Pa. 456, 322 A.2d 362 (1974); *see also* 42 Pa.C.S. § 2301. The authority to supervise and to discharge court-appointed employees is not only a necessary corollary to this appointment power but also is essential to the maintenance of an independent judiciary. *See Commonwealth ex rel. Bradley v. Pennsylvania Labor Relations Board, supra; Ellenbogen v. County of Allegheny*, 479 Pa. 429, 388 A.2d 730 (1978). Since the court has the inherent right to hire, discharge and supervise, an employer-employee relationship exists by definition between the judges and their appointees. *Commonwealth ex rel. Bradley v. Pennsylvania Labor Relations Board, supra; Sweet I, supra; see Costigan v. Philadelphia Finance Department Employees Local 696, AFSCME*, 462 Pa. 425, 341 A.2d 456 (1975). The fact that those employees are paid by the county does not alter the court's employer status. *Sweet I, supra.* We have held, in addition, that the judges of a court of common pleas are in fact *"public* employers" for purposes of PERA. *Commonwealth ex rel. Bradley v. Pennsylvania Labor Relations Board, supra.*

 As public employers, judges must formulate and effectuate policies governing the employment relationship. Indeed, such policies are crucial to the efficient administration of justice. Unlike many public employers, however, judges no longer participate directly in collective bargaining negotiations with their employees. The legislature, recognizing that judges are too scarce and too essential to the administration of justice to be required to perform the non-adjudicatory function of managerial representation of the bargaining table, *Ellenbogen v. County of Allegheny, supra,* amended the County Code in 1976 to provide that judges are to be represented in negotiations as well as representation proceedings by the board of county commissioners. Act of August 9, 1955, P.L. 323, § 1620, *as*

*amended,* 16 P.S. § 1620 (Supp.1984–85). Section 1620 now provides:

> The salaries and compensation of county officers shall be as now or hereafter fixed by law. The salaries and compensation of all appointed officers and employes who are paid from the county treasury shall be fixed by the salary board created by this act for such purposes: Provided, however, That *with respect to representation proceedings before the Pennsylvania Labor Relations Board or collective bargaining negotiations involving any or all employes paid from the county treasury, the board of county commissioners shall have the sole power and responsibility to represent judges of the court of common pleas,* the county and all elected or appointed county officers having any employment powers over the affected employes. The exercise of such responsibilities by the county commissioners shall in no way affect the hiring, discharging and supervising rights and obligations with respect to such employes as may be vested in the judges or other county officers.

16 P.S. § 1620 (Supp.1984–85) (Emphasis added).

The Board argues that, because the judges do not represent themselves at the bargaining table, they are not "associated with collective bargaining" and consequently their personal secretaries are not "confidential employes" under section 301(13) of PERA, 43 P.S. § 1101.301(13). In support of this contention the Board maintains that the county commissioners do not represent judges, contrary to the clear language of section 1620 of the County Code, but solely themselves. The county commissioners, in the Board's view, are empowered to negotiate only matters within their control, namely financial terms, over which the judges have no authority. The Board interprets section 1620 and our cases interpreting it as establishing that bargaining over any other terms of employment is impermissible. Thus there is no occasion for communication between the commissioners and the judges regarding negotiations and no detriment to management in permitting the

inclusion of the judges' personal secretaries in the bargaining unit.

The Board misconstrues the statutory scheme. The legislative amendment neither affects the judges' managerial function nor limits the scope of collective bargaining by court-appointed employees. Section 1620 explicitly states that the county commissioners are to "represent the judges of the court of common pleas" in negotiations. We have interpreted that phrase to mean "sit on behalf of judges." *Ellenbogen v. County of Allegheny, supra,* 479 Pa. at 437, 388 A.2d at 734. The judges are principals in the negotiations participating through the county commissioners. Thus the county commissioners are clearly charged with the responsibility of representing *the judges'* managerial interests, as well as their own, in contract negotiations with court-appointed employees.

Moreover, contrary to the Board's arguments, section 1620's proviso that "[t]he exercise of such responsibilities by the county commissioners shall in no way affect the hiring, discharging and supervising rights and obligations with respect to such employes as may be vested in the judges or other county officers" does not limit the permissible subject of bargaining to purely financial terms. The proviso merely recognizes that, under PERA, matters affecting the hiring, discharge and supervisory powers of the public employer are not subjects of collective bargaining. *See* 43 P.S. § 1101.702 (selection and direction of personnel not subject to collective bargaining); 43 P.S. § 1101.706 (employer's right to discharge for cause not impaired). Rather, under the express language of section 701 of PERA, court-appointed employees' "wages, *hours and other terms and conditions of employment*" are subjects of mandatory bargaining. 43 P.S. § 1101.701 (emphasis added). In *Commonwealth ex rel. Bradley v. Pennsylvania Labor Relations Board, supra,* we rejected the argument of the judges of the Philadelphia Court of Common Pleas that "subjecting 'wages, hours and other terms and conditions of employment' ... to bargaining [would] interfere

with their ability to administer justice." *Id.*, 479 Pa. at 447, 388 A.2d at 739. Relying on our decision in *Ellenbogen v. County of Allegheny, supra,* in which we held that so long as judges retain their authority to select, discharge and supervise court personnel, the independence of the judiciary is unimpaired, we upheld the applicability of PERA to courts of common pleas and their appointees. We further noted that the judiciary has the inherent power to prevent any actual impairment of its independence created by the collective bargaining process. *Commonwealth ex rel. Bradley v. Pennsylvania Labor Relations Board, supra* 479 Pa. at 447, 388 A.2d at 739–40; *see also Ellenbogen v. County of Allegheny, supra.* Thus under our decisions county commissioners are not prohibited from negotiating "wages, hours and other terms and conditions of employment" provided such terms do not impinge upon judicial control of hiring, discharge and supervision in some concrete manner.

Moreover, although, as we indicated in *Ellenbogen v. County of Allegheny, supra* 479 Pa. at 438, 388 A.2d at 735, "most of those matters properly within the scope of mandatory bargaining, see Act 195, §§ 701 and 702, 43 P.S. §§ 1101.701 and 1101.702; *Pennsylvania Labor Relations Board v. State College Area School District,* 461 Pa. 494, 337 A.2d 262 (1975), concern wages and other financial terms of employment," the county commissioners' legitimate fiscal concerns are not the only interests involved on the management side of negotiations with court employees. Judges retain a vital managerial interest in terms such as hours, vacations and other paid leave which could be considered primarily "financial." While the county commissioners are in an ideal position to assess the impact of the total cost of a collective bargaining agreement on the county treasury, they have no expertise in the area of judicial administration. Without input from the judges they would be forced to negotiate in a vacuum. The organization of the court, its workload and the availability of staff must be taken into consideration as well as the bottom line. Thus

the managerial policies formulated by the judges must remain an integral element of the county commissioners' bargaining position.

For example, a shorter work day, increased vacation time or additional paid holidays might be considered in return for a smaller wage increase. Such a compromise may be acceptable to the county commissioners and the union. However, the decrease in total work hours might adversely affect the administration of justice. The county commissioners must consult with the judges in order to ascertain the effect such a proposal may have upon the court if the resulting collective bargaining agreement is to pass constitutional muster. If it is determined that there would be no adverse impact there is no reason why the proposal should not be embodied in the collective bargaining agreement. It would be contrary to the public interest to bar such terms on the ground that they may impair the judges' "supervisory" authority in the abstract when the simple solution of prior consultation with the judges themselves is available. In any event, contractual terms which actually impair the independence must be declared void and agreements countenancing such terms would totally defeat the purposes of PERA.

If the rights given to county court employees under PERA are to have any efficacy, those employees must be permitted to bargain with the county commissioners concerning all of PERA's permissible subjects of collective bargaining. Concomitantly, to promote and maintain the efficient administration of justice and the enforceability of their employees' contracts, the judges of the courts of common pleas must have input through the county commissioners. Communication between the judges and the commissioners is essential and the access of the judges' personal secretaries to such crucial information is inevitable. Thus judicial secretaries must be deemed "confidential employes" for purposes of PERA and may not be included in any bargaining unit consisting of court-appointed employees.

Accordingly, the order of the Commonwealth Court affirming the Board's inclusion of judicial secretaries in the court-appointed employees' bargaining unit is reversed and the Board's order is to that extent vacated.

LARSEN, J., files a concurring opinion.

ZAPPALA, J., files a dissenting opinion.

LARSEN, Justice, concurring.

I join in the result reached by the majority based upon the stipulation of the parties that judicial secretaries are confidential employees. Notes of Testimony, January 31, 1979 at 321–22, Reproduced record at 71a–72a.

ZAPPALA, Justice, dissenting.

The inherent authority of the judiciary to hire, supervise and discharge court personnel creates an employer-employe relationship between judges and their appointees. The judges of the courts of common pleas are "public employers" as the term is defined by the Public Employe Relations Act (PERA), Act of July 23, 1970, P.L. 563, No. 195, *as amended*, 43 P.S. §§ 1101.101–1101.2301. *Commonwealth ex rel. Bradley v. Pennsylvania Labor Relations Board*, 479 Pa. 440, 388 A.2d 736 (1978). The issue of whether judicial secretaries are "public employes" under PERA, however, requires an analysis of the statutory exclusion of "confidential employes."

Under PERA, the term "confidential employe" is not coterminous with, and should not be confused with, traditional notions of an entrusted employe. There is no doubt that the latter relationship may arise between a judge and secretary. "Confidential employe" is defined by the statute to include "... any employe who works: (i) in the personnel offices of a public employer and has *access to information subject to use* by the public employer *in collective bargaining;* or (ii) in a close continuing relationship with public officers or representatives *associated with collective bar-*

*gaining* on behalf of the employer." 43 P.S. § 1101.-301(13). [Emphasis added].

The intended purpose of the exclusion for confidential employes is to strike a balance between the employe's right to representation and the employer's right to develop labor policies with the aid of employes who are not represented by the union with whom the employer bargains. *Pennsylvania Labor Relations Board v. Altoona Area School District*, 480 Pa. 148, 389 A.2d 553 (1978). As the majority opinion states, this policy underlying the exclusion makes it peculiarly appropriate to interpret the statutory definition narrowly. Under the majority's analysis, the balance has not been properly struck in this case.

In *Pennsylvania Labor Relations Board v. Altoona Area School District*, (Altoona) the Altoona Area School Service Personnel Association (Association) had been certified as the exclusive representative of a unit comprised of the School District's secretarial, supportive, maintenance and cafeteria employes. The Association subsequently requested the Board to clarify its description of the unit with regard to, *inter alia*, secretaries to the high school and junior high school principals. This Court reversed the Commonwealth Court's determination that the secretaries were confidential employes for purposes of PERA. Recognizing that PERA was enacted to accord public employes the right to bargain with their employers, we stated, "[s]ince § 1101.-301(13) denies to certain employes this fundamental right, the Board could properly determine that 'associated with' was best read so as to exclude only those employes whose inclusion in the bargaining unit would seriously impair the public employer's ability to bargain on a fair and equal footing with the union." 480 Pa. at 155, 389 A.2d at 557.

In holding that the Board had not erred in determining that the secretaries were not confidential employes, we noted the Board's findings that the principals for whom the secretaries worked were not part of the bargaining team; that the principals were consulted on occasion regarding the effect of contract provisions; and that a secretary to a

junior high school principal had typed memoranda relative to collective bargaining on two occasions during her ten-year employment. We concluded that "to deny these secretaries the salutary effects of public employe status based on such a minimal connection with collective bargaining would distort the legislative intent to accord employes in the public sector the right to organize and have the benefit of union representation." 480 Pa. at 157, 389 A.2d at 558.

In the instant case, the Pennsylvania Labor Relations Board similarly concluded that the judicial secretaries have not been involved in collective bargaining. The Commonwealth Court properly observed the standard of review of "abuse of discretion" in reviewing the PLRB's findings of fact. Acknowledging that the county commissioners are the exclusive managerial representatives for collective bargaining purposes, *Ellenbogen v. County of Allegheny*, 479 Pa. 429, 388 A.2d 730 (1978), the court affirmed the PLRB'S conclusion that the judicial secretaries are not confidential employes under PERA. In doing so, the court noted that the record was barren of evidence that the judicial secretaries worked closely and continually with managerial employes who formulate the employer's labor policy.

This Court is bound by the same standard of review. Review of the reproduced record in this case discloses minimal testimony relating to the involvement of the judicial secretaries and judges of the Lehigh County Court of Common Pleas in the collective bargaining process. The testimony of President Judge Martin J. Coyne demonstrates that the judges', and concomitantly their secretaries', "involvement" in the formulation or effectuation of labor policy is non-existent:

Q. Each judge has a secretary, Your Honor, a personal secretary?

A. Yes, sir.

Q. *If, and this is a big if, but if the court were to engage in collective bargaining or if they were in some way to get involved in collective bargaining,*

*which of the judges would be involved in that process?*

A. I presume I would be for one.

Q. Would the other judges?

A. Now, understand that each judge in this jurisdiction has been assigned an administrative function. That's by administrative order. For example, I have already alluded to the fact that Judge Davison is an administrative judge for the probation. Judge Mellenberg has been given Domestic Relations, and Judge Backenstoe has been given the administrative duties with respect to the criminal and civil division. Now, in our scheme of things, I have the overall responsibility for everything that goes on, but I certainly look to these judges for first line administration in the areas to which they have been assigned. To the degree that they are involved in those areas, their secretaries are privy, I guess, to everything that goes on.

Q. So would the secretaries have access to confidential information which would be related to, first of all, I guess, grievances?

A. I am certain of that.[1]

Q. Would they have access to confidential information, which would be related to the collective bargaining process, whether or not certain things were agreed to with a bargaining representative?

A. I am not quite certain about the answer to that. It depends, I guess, who was doing the bargaining, what mechanics were set up there. There's a pretty good chance that that might happen, but I couldn't say without—

1. In *Pennsylvania Labor Relations Board v. Altoona Area School District,* supra, we held that the handling of grievances is not part of the formulation or effectuation of an employer's labor policy. We specifically rejected an argument by the school district that the principals were "associated with" collective bargaining within the meaning of § 1101.301(13) because they were involved in handling grievances at the first level.

Q. For example, if there was a proposal with respect to the Probation Office, the Probation Office be open certain hours and not open other hours, would you go to Judge Davison and discuss that matter?

A. Absolutely.

Q. And would his secretary have access to the court's position with respect to such a proposal?

A. No question about that, she would.

[R. 72a, 73a] [Emphasis added]

It is apparent from this testimony that the judges have not been involved directly or indirectly in the collective bargaining process. The line of questioning was entirely hypothetical and demonstrates that involvement of the judges is illusory. To the extent that the majority opinion has made inferences to the contrary, such inferences are unfounded and belied by the record itself.

The judges are not part of the bargaining team and there was no testimony that the judicial secretaries have had access to collective bargaining materials. The record is devoid of evidence of even occasional communications relating to the effects of proposed contract provisions, comparable to those between the managerial representative and school principals presented and found insufficient in *Pennsylvania Labor Relations Board v. Altoona Area School District, supra.*

The majority's holding signals an abandonment of our limited scope of review of these matters. The Court's holding denies union representation to judicial secretaries not on the basis of an actual, even though attenuated, connection with collective bargaining, but on an imagined one. Based upon the record in this case, I would hold that the judicial secretaries are not confidential employes as defined by PERA.

The majority opinion concludes that the subjects of collective bargaining which may be incorporated into an agreement by the county commissioners are not limited by the judiciary's inherent authority to hire, supervise and dis-

charge court personnel. While I do not believe that the majority's discussion on this point is necessary to resolve the narrow issue with which this Court is confronted, I wish to make it clear that I depart from the majority's analysis that the county commissioners are not limited in the scope of the subjects properly included in the collective bargaining process.

Although the majority readily concedes that judges retain a vital interest in items such as hours, vacations and other paid leave, the majority would permit such items to be included in the collective bargaining process, characterizing the same as "primarily financial." Rather than restricting the matters involving court personnel which may be submitted to collective bargaining to their financial components —i.e. the compensation to be paid for vacations and other paid leave—the majority would permit such matters to be bargained for, reasoning that "[i]f it is determined that there would be no adverse impact there is no reason why the proposal should not be embodied in the collective bargaining agreement." [Majority opinion at 279]

I reject such an analysis. I would hold that if the collective bargaining agreement includes terms which affect, adversely or not, the judiciary's authority to hire, discharge or supervise court personnel, those terms are void because the matters are vested solely in the judiciary. The commissioners lack the authority to bargain such terms.

The effect of the majority's approach would be to create uncertainty in the collective bargaining process—what may properly be subject to collective bargaining would turn on what is *acceptable* to the judiciary, rather than what is *bargainable*. Such a subjective standard is in fact no standard at all. The proper starting point of our analysis should be to determine what is properly subject to bargaining, not what is acceptable.

The majority dismisses this concern by stating that, "[i]n any event, contractual terms which *actually impair* the independence [of the judiciary] must be declared void...." [Majority opinion at 279] [Emphasis added]. The majori-

ty's benefit/detriment treatment is inappropriate. This Court has never held that actual, or even potential, impairment of the judiciary's independence is necessary—we have always held that it is the *interference* or *infringement* on the judiciary's independence which is critical.

*Beckert v. American Federation of State, County and Municipal Employees,* 56 Pa.Cmwlth. 572, 425 A.2d 859 (1981), per curiam aff'd., 501 Pa. 70, 459 A.2d 756 (1983), serves to illustrate the problems which may arise if the collective bargaining agreement incorporates those matters which affect the judiciary's inherent authority to control the court employes, despite the common pleas judges acquiescence in the agreement.[2] Although the subject of the lawsuit was a collective bargaining term originally agreed to by the common pleas judges, it subsequently proved to be unworkable and undesirable prior to the expiration of the term of the agreement. The Common Pleas judge's attempt to control the discharge of one of his employes was affected by the agreement, resulting in a charge of unfair labor practice.

The Honorable Paul R. Beckert filed an equity action against the union which had acted as the bargaining representative for the non-professional court employes of the Bucks County Court of Common Pleas. The union had entered into an agreement with the commissioners of Bucks County and the Common Pleas judges which included a multi-step procedure for the resolution of grievances between the parties concerning the agreement.

**2.** The majority opinion emphasizes the relationship between the county commissioners and the judges of the common pleas court in analyzing the scope of collective bargaining agreements, suggesting that agreement by the judges of that court will suffice to preserve the judiciary's authority over court personnel. The judiciary's inherent authority over court personnel is a concept which relates to the judiciary's freedom from the interference of *other* branches of the government. Although the authority is generally perceived to be exercised by the courts at the local level, it rests ultimately with this Court. Clearly what is acceptable to the judges of the common pleas court may not be acceptable to this Court. The majority opinion does not respond, however, to this larger issue.

The agreement provided that no employe could be demoted, suspended, discharged or disciplined without just cause. A district justice's clerk, who had been discharged from her employment, appealed her discharge through the grievance procedure. The clerk was reinstated at one level of the grievance procedure when an agreement was reached between the court administrator and the union, but the discharge was upheld when the district justice appealed the matter to the president judge. The agreement had provided for an appeal to the president judge only when the grievance had not yet been resolved. The union subsequently filed unfair labor practice charges with the Pennsylvania Labor Relations Board (Board) against the commissioners and the Court of Common Pleas.

The equity action filed in the Commonwealth Court sought to permanently enjoin the Board from exercising jurisdiction over the unfair labor practice charges on the theory that the discharge of a court employe is a matter within the exclusive province of the judiciary. The Commonwealth Court entered the permanent injunction, holding that the agreement could not validly give a court employe a right to have his discharge reviewed by a non-judicial branch of government. The court concluded that a common pleas court could provide for a grievance procedure in discharge cases in the exercise of its constitutional power. The court emphasized that discharge decisions would have to remain finally with the court; otherwise, power to review such decisions would encroach upon the judiciary's inherent authority to control the hiring and discharging of court personnel.

The difficulties inherent in the majority's reasoning are numerous. Inasmuch as the instant action does not provide this Court with the proper vehicle to resolve the complicated issues which the majority opinion discusses, I would reserve such analysis until the issues have been properly presented to this Court. I maintain, however, that the scope of the subjects which may be properly included in a collective bargaining agreement is absolutely limited by the judi-

ciary's authority to hire, supervise and discharge court personnel.