537 A.2d 805

**PENNSYLVANIA LABOR RELATIONS BOARD, Appellee,**

v.

**Michael A. DELLA VECCHIA, Recorder of Deeds of Allegheny County, and the County of Allegheny.**

**Appeal of the COUNTY OF ALLEGHENY.**

Supreme Court of Pennsylvania.

Feb. 25, 1988.

James J. Dodaro, County Solicitor, Thomas H.M. Hough, Asst. County Solicitor, Allegheny County Law Dept., Pittsburgh, for County of Allegheny.

James L. Crawford, John R. Neurohr, Harrisburg, for Pennsylvania Labor Relations Bd.

Stanley B. Lederman, Pittsburgh, for Michael A. Della Vecchia.

## OPINION

ZAPPALA, Justice.

The County of Allegheny appeals an Order of an en banc panel of the Commonwealth Court reversing an Order of the Court of Common Pleas of Allegheny County and reinstating the final Order of the Pennsylvania Labor Relations Board (PLRB). The PLRB found that an agreement entitled "Memorandum of Understanding", between the Allegheny County Recorder of Deeds and the Service Employees International Union (SEIU), Local 585, was a collective bargaining agreement under the terms of the Public Employe Relations Act (PERA), 43 P.S. § 1101.101 et seq. Inherent in that finding was a determination that the Recorder of Deeds was a "public employer" as that term is also defined under PERA, 43 P.S. § 1101.301(1) and under our decisions in *Ellenbogen v. County of Allegheny*, 479 Pa. 429, 388 A.2d 730 (1978) and *Commonwealth ex rel. Bradley v. PLRB*, 479 Pa. 440, 388 A.2d 736 (1978). For the reasons that follow, we reverse the Order of the Commonwealth Court.

## I. FACTS

The Allegheny County Commissioners and the SEIU entered into a collective bargaining agreement covering the period from January 1, 1981 until June 30, 1982. Article II of that agreement, entitled "Recognition", provides in pertinent part:

> The county hereby recognizes the union as the sole and exclusive bargaining representative of the unit employees with respect to such terms and conditions of employment exclusively within the control of the County Commissioners and excluding those terms and conditions of employment which might affect the authority of the controller, recorder of deeds and treasurer to hire, terminate, and supervise unit employees.

Contemporaneous with this agreement, the county row officers including Michael Della Vecchia, Recorder of Deeds of Allegheny County, entered into a "Memorandum of Understanding" with SEIU. This memorandum purports to cover the non-economic terms and conditions of employment between the union and the individual row officers, including but not limited to hiring, discharge and supervision. The memorandum contains a rather lengthy preamble in which the parties disclaim any intent to place the row officer in the position of "public employer" as defined under PERA, but which then also guarantees the right of either party to go into court and either prove or negate that understanding.[1]

Following the endorsement of the collective bargaining agreement with the county and the "Memorandum of Understanding" with the Recorder of Deeds and other row officers, three employees were discharged by the Recorder of Deeds purportedly for economic reasons. The employees filed grievances, which they sought to take to arbitration, claiming the discharges were unjust terminations. The

---

1. The Court wishes to note that in viewing the Memorandum of Agreement and its lengthy preamble, we were disturbed that the same appears to be little more than a thinly veiled attempt to seek declaratory relief under the guise of collective bargaining. In the future, this Court will not look favorably upon such attempts.

Recorder responded that the discharges were actually lay-offs and as such did not constitute grounds for a grievance under the terms of the Memorandum of Understanding. At that point SEIU filed unfair labor practices charges with the PLRB against the Recorder of Deeds and the Board of County Commissioners. The two claims were consolidated for hearing and the hearing examiner issued a proposed order dismissing the charges against the Commissioners, but finding that the Recorder, by his refusal to submit the grievances to binding arbitration, had committed an unfair practice in violation of § 1201(a)(1) and (5) of PERA. The Recorder filed exceptions which the PLRB dismissed and upheld the preliminary determination of the hearing officer. The Recorder appealed to the Court of Common Pleas of Allegheny County, which found that the Recorder was not a "public employer" under PERA and that the Memorandum of Understanding was not a valid collective bargaining agreement. The PLRB appealed to the Commonwealth Court, which reversed the Common Pleas Order. Commonwealth Court found a type of estoppel, stating that

> while perhaps not obligated to do so under Act 115, [16 P.S. § 1620] the Recorder of Deeds nevertheless negotiated with the union representing his employees an agreement covering those matters within his exclusive control. Having done so, the Recorder cannot now repudiate that agreement by arguing his incapacity to enter into the agreement in the first instance.

*Commonwealth of Pennsylvania, PLRB v. Della Vecchia et al.*, 90 Commw. 235, 243–44, 494 A.2d 1151, 1156 (1985). While this theory may have an equitable appeal, the approach and the result are contrary to the intent and purpose of the Act. The Commonwealth Court's holding in effect grants legitimacy to the individual row officers as *independent* "public employers" capable of collective bargaining within the scope of PERA. This was never the purpose of PERA as stated by the legislature or interpreted by the courts. Taken to its logical extreme, the holding allows the

jurisdictional status of the PLRB to be conferred upon any Collective Bargaining document solely by agreement of the parties involved and would render the provisions of the PERA a nullity.

## II. DISCUSSION

In *Ellenbogen v. County of Allegheny*, 479 Pa. 429, 388 A.2d 730 (1978), *Sweet v. PLRB*, 479 Pa. 449, 388 A.2d 740 (1978) (*Sweet II*), and *Board of Judges, etc. v. Bucks County Commissioners*, 479 Pa. 457, 388 A.2d 744 (1978), this Court interpreted the legislative intent of the PERA regarding the exclusive "managerial representative" for purposes of collective bargaining involving county employees falling within the purview of the Act. In *Ellenbogen*, we specifically held that the County Commissioners were the sole managerial representatives in proceedings under PERA and therefore were solely responsible for negotiating collective bargaining agreements thereunder. To reach this conclusion we interpreted the then newly amended § 1620 of the County Code, 16 P.S. § 1620, (Act 115) as setting forth the manner and scope of collective bargaining under the PERA.[2] Section 1620 provides:

### Salaries and Compensation

The salaries and compensation of county officers shall be as now or hereafter fixed by law. The salaries and compensation of all appointed officers and employes who are paid from the county treasury shall be fixed by the salary board created by this act for such purposes: **Provided, however, That with respect to representation proceedings before the Pennsylvania Labor Relations Board or collective bargaining negotiations involving any or all employes paid from the county treasury, the board of county commissioners shall have the sole**

2. While the statute applies to counties of the third through eighth class, we specifically held the legislative judgment expressed therein applicable to all judicial districts and a fortiori, all counties regardless of class. *Ellenbogen*, 479 Pa. at 436, 388 A.2d at 733–34.

power and responsibility to represent judges of the court of common pleas, the county and all elected or appointed county officers having any employment powers over the affected employes. The exercise of such responsibilities by the county commissioners shall in no way affect the hiring, discharging and supervising rights and obligations with respect to such employes as may be vested in the judges or other county officers.

Act of August 9, 1955 P.L. 323 § 1620, as amended, June 29, 1976, P.L. 460 § 1 (Supp. 1987–88) (1976 amendment emphasized). Our holding logically flowed from the conclusion that the legislature intended to unify and provide consistency in collective bargaining.

The Legislature's designation of county commissioners as managerial representative also avoids the potential difficulties of having *too many decision-makers, none with full authority to reach an agreement,* on the public side of the bargaining table. The amendment thus ensures that the managerial representative will have *full authority* to reach early agreement. Such a setting, legislatively designed to promote swift and efficient bargaining proceedings, is not only attractive to parties at the bargaining table, but also advances the public interest in settlement of labor disputes.

*Ellenbogen,* 479 Pa. at 436–37, 388 A.2d at 734. (emphasis supplied).

■ In *County of Lehigh v. Commonwealth of Pennsylvania, PLRB,* 507 Pa. 270, 489 A.2d 1325 (1985), we reiterated and clarified our interpretation of the Act as providing that the County Commissioners are the *sole* collective bargaining agents. In the context of the judiciary, we held that under 16 P.S. § 1620 the County Commissioners were not prohibited from negotiating wages, hours and *other terms and conditions of employment* on behalf of judges. In so holding, we rejected the Board's argument that § 1620 was restricted to matters within the commissioners'

control and that bargaining over any other terms was impermissible. We stated:

The legislative amendment (§ 1620) neither affects the judges' managerial function nor limits the scope of collective bargaining by court-appointed employees. Section 1620 explicitly states that the county commissioners are to "represent the judges of the court of common pleas" in negotiations. We have interpreted that phrase to mean "sit on behalf of judges." *Ellenbogen v. County of Allegheny, supra* 479 Pa. at 437, 388 A.2d at 734. The judges are principals in the negotiations participating through the county commissioners. Thus the county commissioners are clearly charged with the responsibility of representing **the judges'** managerial interests, as well as their own, in contract negotiations with court-appointed employees.

Moreover, contrary to the Board's arguments, section 1620's proviso that "[t]he exercise of such responsibilities by the county commissioners shall in no way affect the hiring, discharging and supervising rights and obligations with respect to such employes as may be vested in the judges or other county officers" does not limit the permissible subject of bargaining to purely financial terms. The proviso merely recognizes that, under PERA, matters affecting the hiring, discharge and supervisory powers of the public employer are not subjects of collective bargaining. *See* 43 P.S. § 1101.702 (selection and direction of personnel not subject to collective bargaining); 43 P.S. § 1101.706 (employer's right to discharge for cause not impaired). Rather, under the express language of section 701 of PERA, court-appointed employees' **"wages, hours and other terms and conditions of employment"** are subjects of mandatory bargaining. 43 P.S. § 1101.701 (emphasis added).... If the rights given to county court employees under PERA are to have any efficacy, those employees must be permitted to bargain with the *county commissioners* concerning *all of the PERA's permissible*

*subjects of collective bargaining.* Concomitantly, to promote and maintain the efficient administration of justice and the enforceability of their employees' contracts the judges of the courts of common pleas must have input *through the county commissioners.*

*Lehigh County,* 507 Pa. at 277–78, 279, 489 A.2d at 1328–29, 1330 (emphasis added). The thrust of these opinions clearly points to this Court's interpretation that, under the terms of PERA, collective bargaining is to be accomplished solely through the County Commissioners.[3] The final collective bargaining agreement should ideally cover all aspects bargainable under PERA and should be entered into only after the Commissioners have received input from the respective row officers. An agreement such as the one before us, however, entered into without the consent or ratification of the County Commissioners, cannot be deemed a collective bargaining agreement under PERA since it is entered into by one who is not authorized to do so under PERA, § 1620 of the County Code, or the holdings of this Court. To allow otherwise would deviate from the stated intent of having all bargaining with the County emanate from one voice, i.e. the Commissioners, by inviting unwarranted piecemeal bargaining amongst individual row officers and the union, and, more importantly, would create chaos in the orderly process of determining and providing for both budgetary and other economic and employment matters within the Counties' purview. We again emphasize that such a result is directly contrary to the public policy underlying PERA.

### § 1101.101 Public Policy

The General Assembly of the Commonwealth of Pennsylvania declares that it is the public policy of this Commonwealth and the purpose of this act *to promote order-*

---

**3.** While the factual context of *Ellenbogen* and its progeny involved judges of the Courts of Common Pleas, § 1620 and the aforementioned cases interpreting both § 1620 and PERA clearly include the County Row Officers within the same purview. It is clear, therefore, that the same logic as well as the result obtain.

*ly and constructive relationships* between all public employers and their employees ...

43 P.S. § 1101.101 (1987 Supplement) (emphasis added).

While Appellee cites to the aforementioned cases as containing this Court's finding that the judiciary was, in certain circumstances, deemed to be a "public employer", that finding was never meant to cloak the judiciary with *independent bargaining power* under the terms of the PERA. It was, rather, for the limited purposes of determining that judicial personnel were "public employees" as that term is defined in § 1101.301 of PERA. *Bradley*, 479 Pa. at 447, 388 A.2d at 739. The same logic applies to the row officers.

In further support of this holding, reference is made to *Costigan v. Philadelphia Finance Department Employees Local 696, AFSCME*, 462 Pa. 425, 341 A.2d 456 (1975), which predated the amendment to § 1620. In *Costigan* we held that the Register of Wills and the Commissioners were *joint* employers and the entering into of an agreement by the Register, absent the participation in and/or ratification of the agreement by the County Commissioners that bargaining agreement was of no validity.

■ Therefore, under PERA, § 1620 of the County Code, and our cases interpreting them, we hold that the County Commissioners are the sole managerial representatives possessing authority to enter into collective bargaining agreements with unions under the terms of PERA. In so holding, we note and emphasize that we make no decision relative to the validity of the "Memorandum of Agreement" as a contract, in light of the Recorder's inherent right to control hiring, firing, discharge and supervision, except to say that its enforcement, if any, cannot occur under the mechanisms provided in the PERA, unless those provisions are contained in a collective bargaining agreement endorsed by the Commissioners. Any holding beyond that which we render today would be merely advisory and we decline to do so.

The Order of the Commonwealth Court is reversed.

HUTCHINSON, Former Justice did not participate in the decision of this case.

LARSEN, J., filed a dissenting opinion.

LARSEN, Justice, dissenting.

The primary issue in this case is *not* whether the Recorder of Deeds is a public employer within the meaning of Act 195 [1] (the Public Employer Relations Act) *nor* whether the Recorder of Deeds could enter into negotiations as representative for Allegheny County and reach a collective bargaining agreement with the representative of the Service Employees International Union (SEIU). Our cases, and the relevant legislation [Act 195 and section 1620 of the County Code [2]], have established that the Recorder of Deeds, judges and other county row officers are "public employers" under Act 195 as to matters affecting the hiring, discharge and supervising of public employees, *and that* the County Commissioners are the exclusive representatives of the public employer who, although prohibited from unilaterally bargaining so as to "affect the hiring, discharging and supervising rights and obligations" of the judges and county row officers, must nevertheless bargain *on behalf of* (and in cooperation with) those judges and county officers with respect to those subjects. *See Commonwealth ex rel. Bradley v. PLRB*, 479 Pa. 440, 388 A.2d 736 (1978) and companion cases, *and County of Lehigh v. PLRB*, 507 Pa. 270, 489 A.2d 1325 (1985). Thus, as the majority states, the "Memorandum of Agreement" entered into by the Recorder of Deeds (and other Allegheny County row officers) only, without approval of or ratification by the County Commissioners, is not a valid collective bargaining agreement under Act 195. (The majority holds: "the County Commissioners are the sole managerial representatives possessing authority to enter into collective bargaining agreements with unions under the terms of PERA." At 809.)

1. Act of July 23, 1970, P.L. 563, No. 195, as amended, 43 P.S. §§ 1101.101–1101.2301 (Purdon's Supp. pamphlet 1987).

2. Act of August 9, 1955, P.L. 323, § 1620, as amended, 16 P.S. § 1620 (Purdon's Supp.1987).

However, unlike the majority, I do not believe our inquiry ends there. We must now determine whether a public employer who is not the managerial representative commits an unfair labor practice in refusing to submit a dispute as to discharge of employees to arbitration, where such grievance arbitration procedure is provided for under Act 195 as well as by mutual agreement between that public employer and the employees. I agree with the Pennsylvania Labor Relations Board and the Commonwealth Court in this case, that the Recorder of Deeds did commit such an unfair labor practice in failing to abide by its agreement, even though it was an agreement which was not adopted as a valid collective bargaining agreement. Not every unfair labor practice stems from breach of a specific provision of a collective bargaining agreement. The unfair labor practices found by the Board in the instant case were section 1101.1201(a)(1) and (5), 43 P.S. § 1101.1201(a)(1) and (5) which provide that public employers are prohibited from: "Interfering, restraining or coercing employes in the exercise of the rights guaranteed in Article IV of this Act." and from "Refusing to bargain collectively in good faith ... including but not limited to the discussing of grievances with the exclusive representative." These unfair labor practices arose from the obligation of a public employer to arbitrate grievances, an obligation found within the Act itself, *id.* at § 1101.903, as well as in the mutual agreement of the parties. As we stated in *Pittsburgh Joint Collective Bargaining Committee v. City of Pittsburgh*, 481 Pa. 66, 74, 391 A.2d 1318 (1978):

"Here, there is no question that there was a mutual agreement to arbitrate future disputes. Equally as clear is that there is no challenge to the capacity of the Authority to enter into an agreement providing for arbitration. Furthermore, the parties operated under this agreement for a period of three and one-half years. In this posture the lower court properly refused to reach the merits of appellant's claim of lack of capacity." *Am-*

*bridge Borough Water Authority v. Columbia, supra,* 458 Pa. [546] at 551, 328 A.2d [498] at 501.

*In the instant case the challenge is directed to the capacity of the employer to submit this particular subject to arbitration.* This distinction however does not require a different result. The relationship between the public employer and the designated bargaining unit is one which must be sustained for years, during which a number of contract negotiations will occur. To sustain a harmonious relationship it is necessary for each of the parties to be pliable and willing to recognize the other's position. Nothing could be more disruptive to such a relationship than a demonstration of bad faith bargaining on the part of one of the parties.

We have already stressed the importance of grievance arbitration in facilitating the development and maintenance of harmonious relationships between the public employer and employee. It is even more supportive of a favorable employment climate where this dispute resolution mechanism arises from the good faith bargaining of the parties rather than being required by statute. *To permit an employer to enter into agreements and include terms such as grievance arbitration which raise the expectations of those concerned, and then to subsequently refuse to abide by those provisions on the basis of its lack of capacity would invite discord and distrust and create an atmosphere wherein a harmonious relationship would virtually be impossible to maintain.* (emphasis added).

For the foregoing reasons, I agree with the decision of the Pennsylvania Labor Relations Board that the Recorder of Deeds committed an unfair labor practice in refusing SEIU's request to submit a grievance relating to discharge of three of its members to arbitration, and I would, therefore, affirm the order of the Commonwealth Court which reversed the Court of Common Pleas and reinstated the final order of the Board.