636 A.2d 253

**COMMONWEALTH of Pennsylvania ex rel. Geoff GALLAS, Individually and on Behalf of The Judges of the First Judicial District of the Commonwealth of Pennsylvania, The Court of Common Pleas of Philadelphia; and its Agent and Representative, The City of Philadelphia, Petitioners,**

v.

**PENNSYLVANIA LABOR RELATIONS BOARD, Respondent.**

Commonwealth Court of Pennsylvania.

Submitted Oct. 6, 1993.

Decided Dec. 30, 1993.

Howard D. Scher and Todd J. Schwartz, for petitioners.

James L. Crawford and John B. Neurohr, for respondent.

Before CRAIG, President Judge, and DOYLE, COLINS, PALLADINO, McGINLEY, SMITH and KELLEY, JJ.

COLINS, Judge.

Geoff Gallas, individually and on behalf of the judges of the First Judicial District of the Commonwealth of Pennsylvania, the Philadelphia Court of Common Pleas, and the City of Philadelphia (petitioners) and the Pennsylvania Labor Relations Board (PLRB), American Federation of State, County and Municipal Employees (AFSCME) District Council 33, AFL–CIO, and Teamsters Local No. 115 (the Teamsters), (collectively, respondent) have filed cross-motions for summary judgment seeking a ruling on the applicability of the Public Employe Relations Act (Act),[1] to the following allegedly

1. Act of July 23, 1970, P.L. 563, *as amended,* 43 P.S. §§ 1101.101–1101.2301.

"confidential" employees of the Philadelphia Court of Common Pleas: court interpreters, court reporters, administrative secretaries, general tipstaves, judicial tipstaves, and judicial secretaries.

The relevant facts of this case are that our Supreme Court issued a Judicial Administration Order on December 19, 1990, assigning to itself the task of overseeing the reorganization of the administrative and budget structure of the Court of Common Pleas of Philadelphia County (Common Pleas). On April 9, 1991, the Supreme Court notified Common Pleas of the elimination of the positions of court criers, court officers and judicial aides, which were replaced by the position of "tipstaff."

The respondent unions filed unfair labor practice charges with the PLRB, alleging that the court reclassified the jobs in response to attempts by the unions to represent nonprofessional employees. The secretary of the PLRB declined to issue complaints on the charges of unfair labor practices, and the PLRB affirmed that decision. The Teamsters appealed that decision to this Court, which heard oral arguments on March 4, 1992. The case was docketed in this Court at Nos. 1676 and 1736 C.D.1991 (unfair labor practice case).

Meanwhile, on November 22, 1991, the PLRB had granted a petition for representation filed by the unions to organize the nonprofessional Common Pleas employees after the city and the unions stipulated before the PLRB that the scope of the proposed bargaining unit would be defined as including seventy-one job classifications within the Act's definition of public employees. However, because of the possible confidential nature of some jobs, the parties disagreed as to whether the Act covered court interpreters, court reporters, administrative secretaries, general tipstaves, judicial tipstaves, and judicial secretaries.

On March 25, 1992, after the PLRB conducted hearings on the confidential employees issue, a hearing examiner issued an order directing submission of eligibility lists. The examiner concluded that all of the disputed job classifications, except

judicial secretaries to Common Pleas' president judge and its administrative judges, are not confidential employees and, therefore, are eligible to vote for union representation.

On April 7, 1992, petitioners filed, with the Pennsylvania Supreme Court, applications for leave to file original process pursuant to Pa.R.A.P. 3307 and for extraordinary relief pursuant to Pa.R.A.P. 3309. The court initially denied the applications but granted them on July 16, 1992, upon consideration of petitioners' application for reargument. The Supreme Court then remanded the case—this present case—to this Court for disposition on the merits.

On December 29, 1992, this Court issued its decision on the unfair labor practice case in *Teamsters Local 115 v. Pennsylvania Labor Relations Board,* 152 Pa.Commonwealth Ct. 394, 619 A.2d 382 (1992). This Court held that covered court employees have the right to organize and bargain collectively under the Act and that any interference with or restraint of that right is an unfair labor practice. Thus, this Court reversed the PLRB's decision to decline the acceptance of jurisdiction, and this Court remanded the case to the PLRB to conduct hearings on the unfair labor practice charges.

In this case, on January 9, 1993, after the Supreme Court's remand of the application for extraordinary relief, this Court directed the present filing of cross-motions for summary judgment. Our standard for deciding these cross-motions for summary judgment, addressed to this Court's original jurisdiction, is that judgment may be entered only if no genuine issues of material fact exist and if a party is entitled to judgment as a matter of law. *Central Dauphin School District v. Commonwealth,* 143 Pa.Commonwealth Ct. 374, 598 A.2d 1364 (1991).

The issues now presented for our resolution are (1) whether each of the disputed job classifications are confidential as defined under the Act; (2) whether application of the Act to court-appointed employees violates the Judicial Code or the Code of Judicial Conduct; and (3) whether application of the Act to court-appointed employees is constitutional.

## I. ARE ANY OF THE DISPUTED JOB CLASSIFICATIONS COMPRISED OF CONFIDENTIAL EMPLOYEES AS DEFINED UNDER THE ACT?

Because Sections 101 and 301(2) of the Act, 43 P.S. §§ 1101.101 and 1101.301(2) exclude confidential employees from coverage under the Act, the first issue is whether any or all of the disputed job classifications are confidential. Preliminarily, respondent contends that this Court does not have jurisdiction to determine whether any of the disputed job classifications are confidential, because the PLRB has exclusive jurisdiction over this question. We disagree.

Our Supreme Court, in *Lehigh County v. Pennsylvania Labor Relations Board*, 507 Pa. 270, 489 A.2d 1325 (1985), reviewed the PLRB's determination, which this Court had affirmed, that judicial secretaries employed by the Court of Common Pleas of Lehigh County could be included in a court-appointed employees' bargaining unit. The Supreme Court reversed our decision and held that judicial secretaries were confidential employees under the Act and, therefore, could not be included in any collective bargaining unit. Implicit in the Supreme Court's decision in *Lehigh County* is the principle that courts do have jurisdiction to determine whether employees are confidential as defined by the Act.

In order to determine whether the disputed job classifications are comprised of confidential employees, we must analyze the functions of each of the six disputed job classifications and evaluate whether those employees meet the Act's definition of confidential employees.

Judicial tipstaves and general tipstaves perform similar duties but have somewhat different responsibilities. General tipstaves are responsible for maintaining order in the courtroom, escorting the judge, providing a limited level of security for the judge in the courtroom, and filing documents. General tipstaves are not a part of any individual judge's personal staff and are not subject to discipline or dismissal by any individual judge.

Judicial tipstaves perform duties similar to a general tipstaff by assisting the judge in the courtroom. However, a judicial tipstaff works on a much more personal level with an individual judge. Judicial tipstaves are part of an individual judge's personal staff and are subject to discipline or dismissal at the discretion of that judge. Their responsibilities extend to assisting the judge in chambers and during in-camera proceedings, performing clerical functions, and performing limited secretarial duties upon the absence of the judicial secretary.

Judicial secretaries are also part of an individual judge's staff and are subject to discipline or dismissal at the discretion of the judge for whom they work. These employees perform such functions as typing personal correspondence for the judge, typing and filing opinions, handling phone calls, scheduling appointments, and screening and opening mail. Both judicial secretaries and judicial tipstaves have complete access to a judge's private chambers and personal files.

Administrative secretaries work from a pool to provide substitute secretarial help throughout the court system. They report to the court administrator's office and are not part of a judge's personal staff though they may be assigned to an individual judge on a temporary basis. However, administrative secretaries are not subject to discipline or dismissal by any individual judge.

Court reporters and court interpreters are also not a part of any individual judge's personal staff and are not subject to dismissal or discipline by any individual judge. Court interpreters' primary function is to interpret Spanish testimony rendered in court, though they may also be called upon to translate written materials or substitute for a general tipstaff if no other tipstaff is available. Their assignments to a particular judge are short-term. The primary function of a court reporter is to transcribe verbatim testimony rendered in judicial proceedings and produce a written verbatim transcript of these proceedings. Court reporters may sometimes be called upon to take verbatim testimony during in-camera hearings held in a judge's chambers. Court reporters are usually assigned to an individual judge on a short-term basis,

but sometimes a relationship develops between a court reporter and a judge which results in a long-term assignment of a court reporter to a particular courtroom.

The question presented to this Court is whether any of these six groups of employees are confidential employees as defined by the Act. This inquiry is relevant, because Section 301(2) of the Act, 43 P.S. § 1101.301(2), excludes confidential employees from the definition of public employe and, therefore, from the purview of Section 401 of the Act, which protects a public employee's right to organize or join a labor organization and to engage in collective bargaining through representatives.

Section 301(13) of the Act, 43 P.S. § 1101.301(13) defines confidential employe as

> any employe who works: (i) in the personnel offices of a public employer and has access to information subject to use by the public employer in collective bargaining; *or* (ii) in a close continuing relationship with public officers or representatives associated with collective bargaining on behalf of the employer. (Emphasis added.)

Both petitioners and respondent agree that none of the disputed employees qualify as confidential under the first criterion, so we shall confine our analysis to whether any employees meet the second criterion.

In *Pennsylvania Labor Relations Board v. Altoona Area School District*, 480 Pa. 148, 389 A.2d 553 (1978), our Supreme Court clarified the second criterion, stating that the Act "limit[s] the exclusion to those employers who work in a close continual relationship with managerial employes who actually formulate, determine *or effectuate* the employer's labor policy." *Id.* at 156, 389 A.2d at 557 (emphasis added).[2]

---

2. Respondent places undue emphasis on the question of whether Common Pleas' individual judges play a significant role in formulating labor policy. In focusing solely on this question, respondent has overlooked the implications of each judge's ability to effectuate labor policy, especially pertaining to members of their personal staff over whose working conditions they have a large degree of control. *Lehigh County,* citing the definition of confidential employee from *Altoona Area School District,* undertook analysis which included individual judges' roles in

*Altoona Area School District* also advises that the Act "is best served by formulating a narrow test for confidential status. . . ." *Id.* at 155, 389 A.2d 557. Utilizing *Altoona Area School District*'s definition of confidential employee, and construing this definition narrowly, we conclude that of the six disputed job classifications, only judicial secretaries and judicial tipstaves are confidential employees excluded from coverage by the Act. This conclusion is based on our determination from the record that (a) Common Pleas' individual judges formulate, determine or effectuate labor policy and (b) only judicial secretaries and judicial tipstaves work in a close, continual relationship with these judges.

First, despite respondent's argument to the contrary, we must conclude that Common Pleas' judges formulate, determine, *or effectuate* labor policy. Respondent contends that because virtually no individual judges are actually involved in the collective bargaining process, they are not "associated with collective bargaining." This contention is undermined by both the record and *Lehigh County.*

Testimony in the record establishes that some of the individual judges play a significant role in formulating labor policy, and all of the individual judges determine and effectuate labor policy. The most significant testimony which described an individual judge's involvement with labor policy is that of the Honorable Nelson A. Diaz, Administrative Judge of Common Pleas. Pertinent portions of his testimony are set forth below (with page numbers of the December 2, 1991 hearing transcript).

Q. Is it possible that any judge in the Court of Common Pleas could be called upon to perform various labor relations functions for the court; for instance, committee membership or chairmanship?

A. I run the division on the basis of a committee process in which a number of judges are involved in the recommenda-

both formulating and effectuating labor policy. "[O]ur decision turns on whether those judges formulate, determine or effectuate managerial labor policies." *Lehigh County,* 507 Pa. at 274, 489 A.2d at 1327.

tion process, and in the process of staffing the courts I use a committee structure.

. . . .

Q. Does that involve how each individual judge staffs or manages his own personal staff?

A. Under, again, the judicial administrative rules of the Supreme Court, each judge has a right to hire or fire three individuals, which involve the tipstaff, their secretaries, and their law clerks. Those three individuals are entirely the prerogative and the responsibility of that judge.

Q. With respect to those three employees only, who do those employees report to?

A. They have a reporting process which relates to that judge individually and only that judge.

Q. Does that judge have the right to either award or sanction or discipline those employees?

A. Yes, he does or she does. [Notes of Testimony (N.T.) 17, 18]

. . . .

Q. What was the primary thrust of that reorganization and redefinition of judicial tipstaff?

A. We were instructed by the Supreme Court that we had to reduce our staffing. As a result of that, I appointed a committee made up of three judges who make recommendations with regard to the reduction of staff to comply with the mandate of the Supreme Court. In March, I believe, the staffing committee made recommendations which related to staff reductions. [N.T. 24]

. . . .

Q. How many committees are there that relate to the internal labor relations policy and collective bargaining strategy of the Common Pleas Court?

A. There's a staffing committee, there's a procurement committee, there is a services committee, I have what I call

an advisory board of probation department—I can't remember all of the committees. I have a civil motions committee, then I have my civil staff gets together of managers, so I have managers both on the civil and criminal side. We get together once a month to determine and talk about staffing levels, staffing functions, staffing problems, so that gives you, I think, a capsule of what I can recall.

Q. Let's go through each of them so you can explain to me a little more what each committee does and how it relates to the labor relations policy in the collective bargaining strategy.

Let's talk about the staffing committee, how does that work?

A. The staffing committee essentially was put together as a result of a mandate of the Supreme Court to reduce the level of staffing and to find out all of the essential requirements. They, in addition, have developed callback lists to try to reemploy individuals that may have been laid off.

Q. Would I be accurate in describing that their function is actually hiring and firing; layoff recall?

A. Recommendations.

Q. Recommendations?

A. All of the hiring and firing functions are really my responsibility, but I have delegated to them a process of recommending and I have followed their recommendations almost 100 percent, but it's only because it's not required. [N.T. 42, 43]

. . . .

Q. Your Honor, I believe the next committee you mentioned was the procurement committee?

A. Yes, the procurement committee developed parameters for the purchase and sale of services for the court and its supplies. In that area I guess the most vivid example is the custodial services.

Q. Are you referring to the privatization of the custodial services?

A. I'm referring to the contract that we have now; yes.

Q. The procurement committee's recommendation on that issue lead to the layoff of some employees; is that correct?

A. That's right.

Q. Was that, again, just a recommendation that you had to make the ultimate decision?

A. That's right.

Q. I believe the next one you mentioned was a probation advisory committee?

A. Yes, I just established a probation advisory committee sort of like an advisory board to be able to determine what policies and functions are being carried on in the probation department. In the past they were out there without any real supervision from the court; outside of the administrators.

Q. So their role relates to the probation department?

A. That's right; only.

Q. The civil motions committee?

A. The civil motions essentially relates to the needs of the motion court and the needs within that. Broad staffing should be applied to that.

Q. The manager's committee?

A. The manager's committee of criminal and civil is essentially to give me feedback on the needs of the divisions. [N.T. 46, 47]

. . . .

Q. What role, if any, does an individual judge who is not administrative judge and does not sit on a committee, what role does that judge have in the overall labor relations or the collective bargaining strategy?

A. Each judge has the responsibility to hire and fire his own staff.

Q. That includes the judicial tipstaffs?

A. That's another rule of the Supreme Court; Jara, which is specifically spelled out in 706-D, which says that the

judge has the right to hire and fire a secretary, a law clerk, and a tipstaff. Back some years ago that included a court reporter and the court reporters were then made a general pool.

Q. An individual judge would have no role in the overall labor relations policy, collective bargaining strategy as it applies to, for example, an employee in the prothonotary's office or an employee in the civil motions room?

A. They may based on the Board of Judges. As the Board of Judges, we can collectively decide other matters that apply to the Court of Common Pleas. That would be only the judges who are commissioned or elected. The senior judges could not participate in the process since they are not members of the Board of Judges. [N.T. 49, 50]

. . . .

Q. In your division of the Court of Common Pleas, the trial division, you've identified five committees, do you have regular appointments to these committees that you make up?

A. That's right.

Q. Are your appointments made from both senior judges and the judges who sit on the Board of Judges?

A. I haven't thought of it, but all the committees have been elected judges that I have now. But I also have, for example, my motions committee, which reflects on the motion process, I have a member of the Bar Association in that committee, but he just has an advisory sort of function within that committee.

Q. The Board of Judge [sic], however, is not composed of any senior judges; is that correct?

A. That's correct, it's only the commissioned or elected. [N.T. 66, 67]

This testimony clearly establishes that individual judges are selected to participate on committees which formulate labor policy. Individual judges make recommendations regarding hiring and firing of employees, staffing of the various court

divisions, court functions that should be performed by outside independent contractors, and delineation of the job responsibilities of court employees.

Moreover, *Lehigh County* discussed in depth the general role of individual judges of a court of common pleas in determining and effectuating labor policies. In *Lehigh County*, our Supreme Court rejected an argument of the PLRB similar to the one advanced by respondent in the present matter and concluded that the personal secretaries of individual judges are confidential employees. In *Lehigh County*, the PLRB argued that since the county commissioners represented the common pleas judges in the negotiation of labor contracts, the judges were not associated with collective bargaining. After reiterating its previous holding that the individual judges of a court of common pleas are public employers under the Act, the Supreme Court stated that "[a]s public employers, judges must formulate and effectuate policies governing the employment relationship. Indeed, such policies are crucial to the efficient administration of justice." *Lehigh County*, 507 Pa. at 275, 489 A.2d at 1328. The court also stated that although the commissioners negotiated on their behalf, the judges remained as the principals in the negotiations, and their managerial functions were unaffected. *Id.* at 277, 489 A.2d at 1328.

Second, only judicial secretaries and judicial tipstaves work in a close, continual relationship with individual judges. The close relationship between individual judges and judicial secretaries and tipstaves is evidenced by the record testimony which establishes: (1) that judicial secretaries and tipstaves are employed as part of a judge's personal staff and have access to their judge's private chambers and personal files; (2) that judicial secretaries and tipstaves are accountable to the individual judge for whom they work regarding their performance and may be rewarded, sanctioned, or disciplined by that judge; and (3) that under the administrative rules of the Supreme Court, each individual judge has the unlimited pre-

rogative to hire or fire his or her judicial secretary and judicial tipstaff.[3]

The employees of the other four job classifications do not share these characteristics. They are not on the personal staff of any individual judge, have no access to any judge's private chambers or files, are not personally accountable to any individual judge, and are not subject to discipline by any individual judge. Individual judges do not have the authority to hire or fire any employee in these four groups of employees. These employees are assigned according to the needs of the court in general and do not work with any one particular judge on a permanent basis. Court reporters and interpreters, general tipstaves, and administrative secretaries do not form a close and continual relationship with individual judges. Therefore, they are not confidential employees as that term is defined by the Act.

## II. DOES APPLICATION OF THE ACT TO COURT-APPOINTED EMPLOYEES VIOLATE THE JUDICIAL CODE OR THE JUDICIAL CONDUCT CODE?

The petitioners next contend that application of the Act to court-appointed employees violates Section 2301(a)(2) of the Judicial Code, 42 Pa.C.S. § 2301(a)(2), and Canon 3 B(4) of the Code of Judicial Conduct. Section 2301(a)(2) of the Judicial Code provides that each court "may appoint . . . and fix the compensation of personal staff." Canon 3 B(4) of the Code of Judicial Conduct advises that a judge "should not approve compensation of appointees beyond the fair value of services rendered." The petitioners argue that applying the Act to the employees in question would interfere with a judge's obligation to assure proper compensation for his or her personal staff.

3. See the testimony of the Honorable Nelson A. Diaz, Common Pleas' Administrative Judge, at pages 18–20 and 25–27 of the December 2, 1991 hearing before Hearing Examiner Thomas G. McConnell. See also the testimony of Kathy McConnal at pages 104–107 of the hearing transcript and the testimony of Wilbert T. Ferguson at page 157 of the hearing transcript.

Petitioners' contention is mooted by our holding in the first part of this opinion that judicial tipstaves and judicial secretaries are confidential employees to whom the Act does not apply. The parts of the Judicial Code and of the Code of Judicial Conduct cited by petitioners apply solely to a judge's personal staff, which, of the six disputed job classifications, includes only judicial tipstaves and judicial secretaries. The other four job classifications are not within the purview of the cited portions of the Judicial Code or of the Code of Judicial Conduct. Therefore, their inclusion within the definition of public employee in the Act does not offend either statute.

### III.  IS THE APPLICATION OF THE ACT TO ANY COURT–APPOINTED EMPLOYEES CONSTITUTIONAL?

Petitioners assert that application of the Act to any court-appointed employees violates the separation of powers between branches of government provided for in Article V, Section 1 of the Pennsylvania Constitution. Their position, based on our Supreme Court's decision in *Sweet v. Pennsylvania Labor Relations Board*, 457 Pa. 456, 322 A.2d 362 (1974), is that Common Pleas has the right and power to do what is necessary to administer justice and that collective bargaining over financial terms for any court employees would interfere with the administration of justice. We disagree.

As respondent accurately asserts, our Supreme Court in *Commonwealth ex rel. Bradley v. Pennsylvania Labor Relations Board*, 479 Pa. 440, 388 A.2d 736 (1978), rejected a similar argument made by the judges of Common Pleas and held the application of the Act to court reporters did not interfere with the independence of the judiciary. We conclude that *Bradley* is controlling with regard to the court reporters in the present matter, because they were the very same subject of the litigation involved in *Bradley*. We also conclude that the holding in *Bradley* extends *a fortiori* to the job classifications of court interpreters, general tipstaves, and administrative secretaries, because they have a similar if not

more distant working relationship with the individual judges than do court reporters. However, we do not extend the holding in *Bradley* to the positions of judicial secretary and judicial tipstaff, because inclusion of these employees in a collective bargaining unit would violate the doctrine of separation of powers for several reasons.

First, in view of the vigorous action our Supreme Court has taken in the past to preserve the independence of the judiciary, it would be imprudent for this Court, without a specific mandate from our Supreme Court, to extend *Bradley* to include the personal staff of an individual judge. In the matter of *In re 42 PA.C.S. § 1703*, 482 Pa. 522, 394 A.2d 444 (1978), our Supreme Court acted, *sua sponte*, without either a case or controversy, to take action to preserve the separation of powers doctrine, when it was threatened by a legislative attempt to require that the courts be subject to what the Supreme Court called the Public Agency Open Meeting Law.[4] In that unique case, Chief Justice Eagen, speaking for a unanimous court, stated: "[T]he separation of powers doctrine has historically protected the judiciary against incursions into areas other than its conduct of adversary litigation." *Id.* at 530, 394 A.2d 449.

In the present matter, it is clear to this Court that involving the positions of judicial tipstaff and judicial secretary in the collective bargaining process allows an incursion into the constitutional independence of the judiciary by subjecting these personal judicial employees to the control of the PLRB, a division of the executive branch of government. Such an incursion would violate the separation of powers doctrine, which mandates that the powers of the judiciary not be encroached upon, policed, or diminished by another branch of government. *Eshelman v. Commissioners of the County of Berks*, 62 Pa. Commonwealth Ct. 310, 436 A.2d 710 (1981), *affirmed sub nom. Eshelman v. American Federation of*

4. Act of July 19, 1974, P.L. 486, 65 P.S. §§ 261–269, popularly known as the Sunshine Law. This law was repealed by the Act of July 3, 1986, P.L. 388. A similar provision is now found as Sections 1–16 of the Sunshine Act, Act of July 3, 1986, P.L. 388, 65 P.S. §§ 271–286.

*State, County and Municipal Employees, District Council 88, AFL–CIO,* 502 Pa. 430, 466 A.2d 1029 (1983).

Second, contrary to respondent's position, *stare decisis* does not require this Court to involve a judge's personal staff in collective bargaining. No court in this Commonwealth has ever held that the personal staff of any elected official can be a member of a union. *Bradley* dealt squarely with the question of whether the Act could apply to court reporters but did not give any opinion as to whether application of the Act to the personal staff of a judge would interfere with the independence of the judiciary. *Lehigh County* excluded judicial secretaries from collective bargaining but dealt only with the question of whether judicial secretaries were confidential employees while never entertaining the issue of constitutionality.

Third, this Court has held on numerous occasions that the collective bargaining process must not infringe upon judges' authority to supervise court personnel. *In the matter of the Appointment of Antolik,* 93 Pa. Commonwealth Ct. 258, 501 A.2d 697 (1985); *Beckert v. American Federation of State, County and Municipal Employees, District Council 88, AFL–CIO,* 56 Pa. Commonwealth Ct. 572, 425 A.2d 859 (1981), *affirmed,* 501 Pa. 70, 459 A.2d 756 (1983). Including a judge's personal staff within a collective bargaining unit greatly increases the probability that the collective bargaining process will infringe upon the individual judge's present authority, under the administrative rules of the Supreme Court, to select, discharge, and supervise his or her personal staff. Both *Bradley* and *Ellenbogen v. County of Allegheny,* 479 Pa. 429, 388 A.2d 730 (1978), conclude that the preservation of this authority is imperative to maintaining the balance between the right of public employees to be represented and engage in collective bargaining and the preservation of the independence of the judiciary. Inclusion of a judge's personal staff in a collective bargaining unit, in our view, would amount to a frontal assault on the independence of the judiciary.

Accordingly, based on the foregoing discussion, this Court grants summary judgment in favor of respondent to the extent that court reporters, court interpreters, general tipstaves, and

administrative secretaries are held to be includable in a proposed bargaining unit. However, because judicial tipstaves and judicial secretaries are confidential employees whose inclusion in a bargaining unit would be contrary to the Act and unconstitutionally violative of the separation of powers doctrine, summary judgment is granted in favor of petitioners as to those employees.

## ORDER

AND NOW, this 30th day of December, 1993, respondent's motion for summary judgment in the above-captioned matter is granted in part and denied in part. Respondent's motion for summary judgment is granted insofar as court reporters, court interpreters, general tipstaves, and administrative secretaries are includable in a proposed collective bargaining unit. Respondent's motion for summary judgment is denied in all other respects. Petitioners' motion for summary judgment is granted in part and denied in part. Petitioners' motion for summary judgment is granted insofar as judicial secretaries and judicial tipstaves are not includable in a proposed collective bargaining unit. Petitioners' motion for summary judgment is denied in all other respects.

SMITH, Judge, concurring and dissenting.

I concur with the majority that court interpreters, court reporters, administrative secretaries and general tipstaves should not be excluded as confidential employees from coverage by the Public Employe Relations Act (Act 195), Act of July 23, 1970, P.L. 563, *as amended,* 43 P.S. §§ 1101.101–1101.2301. I disagree however that judicial secretaries and judicial tipstaves should be excluded from the collective bargaining unit.

### I

The employer, Court of Common Pleas of Philadelphia County, has the burden to prove that an employee or class of employees should be excluded from the bargaining unit. The

record in this case is devoid of any evidence which demonstrates that the employer has satisfied its burden of proof; the majority nonetheless concludes that of the six disputed job classifications, judicial secretaries and judicial tipstaves are confidential employees and shall be excluded from coverage of Act 195. The majority's conclusion is premised on the assumption supported nowhere in this record that the eighty-nine individual commissioned judges of the court "formulate, determine or effectuate" management labor policy and that their judicial secretaries and judicial tipstaves work in a close and continual relationship with those judges.

The majority relies in significant part on the Supreme Court's decision in *Lehigh County v. Pennsylvania Labor Relations Board,* 507 Pa. 270, 489 A.2d 1325 (1985), in which the court held judicial secretaries to be confidential employees excludable from the bargaining unit. However, all four of the judges serving within that jurisdiction performed administrative duties by order of the president judge and presumably communicated with their bargaining representatives, the county commissioners, concerning the subjects of collective bargaining. The facts in *Lehigh County* are vastly dissimilar to the case sub judice due substantially to the disparities in the number of commissioned judges serving in each court and because the petitioners have failed to demonstrate that commissioned judges have any role in the formulation, determination or effectuation of the court's labor policy, excluding of course the president judge and possibly the three administrative judges within the court.

Section 301(13) of Act 195, 43 P.S. § 1101.301(13), defines a confidential employee as any employee employed:

(i) in the personnel offices of a public employer and has access to information subject to use by the public employer in collective bargaining; or (ii) in a close continuing relationship with public officers or representatives associated with collective bargaining on behalf of the employer.

The Supreme Court of Pennsylvania has quite clearly stated in *Pennsylvania Labor Relations Board v. Altoona Area School Dist.,* 480 Pa. 148, 389 A.2d 553 (1978) that:

It was not the purpose of § 1101.301(13)(ii) to exclude every employe even remotely 'associated with' collective bargaining, from the janitorial employes who clean up after negotiation sessions to the employes who keep the negotiators supplied with coffee, drinking water and sharpened pencils. To the contrary, when we consider the purpose of the PERA, it becomes clear that the section is far more amenable to the interpretation given it by the Board—limiting the exclusion to those employers who work in a close continual relationship with managerial employes who actually formulate, determine or effectuate the employer's labor policy.

*Id.* at 155–56, 389 A.2d at 557.[1]

A careful analysis of the record supports the position maintained by the respondents that the judicial secretaries and judicial tipstaves are not confidential employees within the intendment of Section 301. The testimony and exhaustive findings by the hearing examiner show that neither employee has access to documents relating to collective bargaining or materials relating to wages, hours or to working conditions, or to any labor relations policy of the employer. The hearing examiner found that the judicial secretaries' functions involved, among other things, typing of the judges' personal correspondence and opinions, maintaining records and tracking court room calendars, and that the judicial tipstaves maintain order and decorum in the courtroom and calendar listings, called cases and retrieved files for court.[2]

Relying upon *Lehigh County*, the petitioners argue that all of the common pleas court judges are public employers and

1. In *Lehigh County*, the court reiterated the policy considerations underlying the exclusion of confidential employees—a recognition of the need to balance the employees' right to be represented with the employer's right to develop labor policies assisted by employees who are not represented by the union with whom the employer must negotiate.

2. The hearing examiner found that the judicial secretaries and tipstaves all receive the same benefits as other court employees whose benefits are determined as a whole, and that the court's personnel office administers the employee benefits. Further, a judge cannot grant additional salary or benefits not provided through the court's personnel office, and all court employees have personnel files centrally maintained in the personnel department.

that their judicial secretaries work within a confidential area of the collective bargaining process. Testimony by then Administrative Judge Diaz does not support the employer's contentions and to the contrary, belie any participation by all the eighty-nine commissioned judges, either directly or indirectly in the collective bargaining process. At most, Judge Diaz confirms that only the president judge and the city participate in labor negotiations and merely alludes to potential activity by the administrative judges and others appointed to committees by Judge Diaz to make various recommendations to him on the court's operations. Judge Diaz' description of the committees negates any contention or perception that they in any way formulate, determine or effectuate labor policy for the court or for that matter even remotely participate in the collective bargaining process.

Excerpts from relevant portions of Judge Diaz' testimony are set forth below:

Q   Let's go through each of them [committees] so you can explain to me a little more what each committee does and how it relates to the labor relations policy in the collective bargaining strategy.

Let's talk about the staffing committee, how does that work?

A   The staffing committee essentially was put together as a result of a mandate of the Supreme Court to reduce the level of staffing and to find out all of the essential requirements. They, in addition, have developed callback lists to try to reemploy individuals that may have been laid off.

Q   Would I be accurate in describing that their function is actually hiring and firing; layoff recall.

A   Recommendations.

Q   Recommendations?

A   All of the hiring and firing functions are really my responsibility, but I have delegated to them a process of recommending and I have followed their recommendations almost 100 percent, but it's only because it's not required.

.     .     .     .     .

Q   Your Honor, I believe the next committee you mentioned was the procurement committee?

A   Yes, the procurement committee developed parameters for the purchase and sale of services for the court and its supplies.  In that area I guess the most vivid example is the custodial services.

Q   Are you referring to the privatization of the custodial services?

A   I'm referring to the contract that we have now;  yes.

Q   The procurement committee's recommendation on that issue lead to the layoff of some employees;  is that correct?

A   That's right.

Q   Was that, again, just a recommendation that you had to make the ultimate decision?

A   That's right.

Q   I believe the next one you mentioned was a probation advisory committee?

A   Yes, I just established a probation advisory committee sort of like an advisory board to be able to determine what policies and functions are being carried on in the probation department.  In the past they were out there without any real supervision from the court;  outside of the administrators.

Q   So their role relates to the probation department?

A   That's right;  only.

Q   The civil motions committee?

A   The civil motions essentially relates to the needs of the motion court and the needs within that.  Broad staffing should be applied to that.

Q   The manager's committee?

A   The manager's committee of criminal and civil is essentially to give me feedback on the needs of the divisions.

Q   How many judges sit on each committee?

A   *On the manager's committee there's only one judge; Judge Gaffney on the civil side.  On the criminal side there are no judges that sit on that, and all the committees*

*they're all made up of judges and some non-judges which may be lawyers or community folks.* [N.T., 12/2/91, pp. 42–43, 46–47; emphasis added.]

The committee recommendations are exclusively within the authority of the judges in any event and are not affected by collective bargaining which typically involves negotiation over wages and other financial terms of employment. *See Ellenbogen v. County of Allegheny,* 479 Pa. 429, 388 A.2d 730 (1978). Additionally, the committees merely made recommendations to Judge Diaz and had no functions associated with collective bargaining; and it is noteworthy that some of the committees contained lawyers or community representatives.

Judge Diaz' following testimony amply supports the position maintained by the respondents.

Q  Is there any committee established by your office or committee that you're aware of that negotiates with unions.

A  *Only the president judge responsibility for—we're not allowed to negotiate with unions. It is the City's responsibility to negotiate with unions.* All we can negotiate with under the mandate of the Supreme Court is for non-economic issues.  [Emphasis added.]

.     .     .     .     .

Q  When the City goes into negotiations with these unions that already represent the employees, what role does the president judge play?

A  The president judge has the ultimate responsibility to represent the court in non-economic issues based on the needs of the administrative judges.

Q  Does he have a committee if you're aware that he refers to for those matters?

A  If it was just assigned to him in the past, I guess, three or four months.

Q  So that hasn't occurred?

A  It hasn't occurred.

Q  Who had the duties before?

A   Well, the only contract that we've ever been involved with was the AFSCME contract and at that time the non-economic issues were negotiated by Judge Bradley who was then the president judge, but at that time the administrative judge didn't have the same responsibilities.

Q   What role, if any, does an individual judge who is not an administrative judge and does not sit on a committee, what role does that judge have in the overall labor relations or the collective bargaining strategy?

A   Each judge has the responsibility to hire and fire his own staff.

.     .     .     .     .

Q   Who sets the benefits and salaries for the judicial secretary, tipstaff, and law clerk?

A   Presently, they've been set by the court.

Q   Does the individual judge have any role in the salary of his personal staff?

A   No, he doesn't.   He only has the right to hire and fire; he can't set salaries.   Salaries are set forth by the administrative judge.   [N.T., pp. 48–50.]

Q   Sir, have you specifically delegated to any of these five committees [staffing committee, procurement, services, advisory board of probation department, civil motions, and managers] the duty and responsibility of developing proposals for collective bargaining or which might be utilized in collective bargaining?

A   I have not.

.     .     .     .     .

Q   During the eleven years that you've been a member of the Board of Judges, did Judge Bradley ever convene the Board of Judges to consider a proposal in collective bargaining?

A   No, he didn't.

Q   Did Judge Bradley, ever convene the Board of Judges to promulgate proposals for collective bargaining?

A   No, he didn't.   I'm not aware of that;  he may have.

Q During those eleven years, in fact, has the Board of Judges functioned in any capacity with respect to assisting the president judge in fulfilling his responsibilities as chief negotiator?

A I don't believe so. The reason I hesitated is they're always motions of pay increases and complaints about relationships with employees and management issues. I don't know if any of them every relate to labor issues.

Q Or to collective bargaining?

A Or to collective bargaining.

Q Am I correct, sir, in understanding that historically the court's proposals for collective bargaining, I mean historically by Judge Bradley, have been developed by Judge Bradley or his administrative staff?

A That's correct. [N.T., pp. 72, 77–78.]

Further testimony by Judge Diaz is illuminating on the question of the individual judges' participation in the collective bargaining process.

Q In other words, Justice Cappy's proposal Judge Blake would be the chief negotiator but the administrative judges and Mr. Gallas would have a significant amount of input into the collective bargaining process subject to some mediation or other type of—

A Mr. Gallas and Blake would be the chief negotiators and the administrative judge would have input.

Q Subject to this mediation by ranking administrators by the Supreme Court or the AOPC?

A That's right.

Q Just for the sake of the record, am I correct that to date the Court of Common Pleas has never collectively bargained an agreement for its non-professional employees?

A That's correct, that I'm aware of. [N.T., p. 66.]

HEARING EXAMINER McCONNELL: It is established now how negotiations will occur next time.

THE WITNESS: Yes, the president judge and the executive administrator will be involved in whatever negations

occur with regard to labor contracts that apply to the entire court. If they only apply to a division then they're given to that division. But it's unlikely that any one would apply to a division; they apply to the entire court. [Id., at 95–96.] Judge Diaz' testimony established only one fact—input into the collective bargaining process is limited solely to the president judge and possibly the three administrative judges of the court.

The test applied by the Board in evaluating an employee's alleged confidential status is a narrow one. That test is whether or not the employee asserted to be confidential actually serves in any confidential capacity to a person who formulates, determines or effectuates management policies in the field of labor relations. The relevant portion of Section 301 for purposes of this proceeding defines a confidential employee as one who works in a close relationship with public officers or representatives "associated with" collective bargaining. The term "associated with" must be considered in the context in which it appears in the Act, and as such may be interpreted as a legislative intent to exclude only those employees, by virtue of their inclusion in the bargaining unit, who would seriously impair the employer's ability to bargain. *Lehigh County; Altoona Area School Dist.* The hearing examiner appropriately required that there be a "labor nexus," meaning that the employee must be privy to collective bargaining strategy, particularly involving labor proposals, prior to a union's knowledge of such strategy, and properly found that no such labor nexus exists in this case.[3]

As to any reliance upon *Lehigh County,* the testimony here makes it abundantly clear that *Lehigh* is distinguishable. The Lehigh County commissioners serve as representatives of the

---

**3.** Citing *Washington Township Municipal Auth. v. Pennsylvania Labor Relations Board,* 131 Pa.Commonwealth Ct. 36, 569 A.2d 402, *appeal denied,* 525 Pa. 652, 581 A.2d 577 (1990), the Board stated the principle that where an employer has had no prior bargaining with unions, the Board has determined that a confidential status cannot be found. Furthermore, in *Altoona Area School Dist.,* the court rejected the employer's argument that school principals were "associated with" collective bargaining solely because of their involvement in handling grievances.

court for bargaining purposes; and while recognizing the right of court employees to organize under Act 195, the Supreme Court found the judicial secretaries to judges in that court to be confidential employees because of the expectation or inevitability that they would become involved in the collective bargaining process as communication between the judges and the county commissioners is essential and access of the judges' secretaries to information involved in that process is a likely possibility.

That possibility however does not exist in the matter sub judice where Judge Diaz has provided no testimony to demonstrate that any of the eighty-nine commissioned judges, except the president and administrative judges, would formulate, determine or effectuate labor policy for the court and become actively involved in the collective bargaining process such that their judicial secretaries are likely to have access to confidential information related to collective bargaining. In concluding that individual judges' judicial secretaries and judicial tipstaves are confidential employees, the majority focuses on the unproven assumption that individual judges "effectuate" management labor policy as opposed to formulate or determine that policy.

The majority has grafted its own interpretation of what it means to effectuate management labor policy rather than reading the word in the context in which it should be viewed—the process by which judges may become involved in collective bargaining as described in *Lehigh County* through the direct communication between judges and management negotiation representatives to formulate, determine or effectuate management labor policy. Only the president judge, and possibly administrative judges, and the city have the power to ultimately become involved in the collective bargaining process to create an agreement between the employer and union.[4]

4. Because the president judges and administrative judges of the court may have collective bargaining roles, their judicial secretaries and judicial tipstaves however may be excluded from the coverage of Act 195.

The purpose of Act 195 is to permit public employees to organize and to bargain collectively for matters concerning wages, hours and other terms and conditions of employment. To exclude the judicial secretaries and judicial tipstaves from coverage by the Act on the record produced here would be tantamount to depriving approximately two hundred public employees of their right to organize and to bargain collectively. If the legislature intended to exclude such a substantial number of public employees, then perhaps the legislature should amend Act 195. Unless the legislature determines otherwise, I would not deny to all judicial secretaries and judicial tipstaves coverage afforded by the Act to public employees within the Commonwealth of Pennsylvania.

## II

The majority refuses to extend the holding in *Commonwealth ex rel. Bradley v. Pennsylvania Labor Relations Board,* 479 Pa. 440, 388 A.2d 736 (1978), to judicial secretaries and judicial tipstaves since their inclusion in a collective bargaining unit would violate the separation of powers doctrine purportedly because to do so would allow an "incursion" into the constitutional independence of the judiciary; and inclusion of these employees would increase the probability that the process would infringe upon an individual judge's present authority to select, discharge and supervise personal staff. In *Bradley,* the Supreme Court concluded that so long as judges retained their authority to select, discharge and supervise court personnel, the independence of the judiciary remains unimpaired and judicial authority in these areas is not infringed by the collective bargaining process. On the other hand, the Supreme Court expressly noted in *Lehigh County* that the process does not prevent bargaining over wages, hours and other terms and conditions of employment unless the bargaining impinges in some concrete way upon judicial control of hiring, discharge and supervision of its employees.

The basic character of the functions or power under scrutiny here is not judicial in nature; the functions of selecting, supervising or discharging employees are administrative in

nature and do not involve a judge's power to interpret and apply the law in an actual controversy. Moreover, the U.S. Supreme Court firmly held in *Forrester v. White*, 484 U.S. 219, 108 S.Ct. 538, 98 L.Ed.2d 555 (1988), that personnel decisions such as hiring and firing of court employees are administrative rather than judicial in nature; and in *Ellenbogen*, the court acknowledged the principle that judges should devote their attention to judicial responsibilities rather than "non-judicial or non-adjudicatory" activities of the collective bargaining. This principle is buttressed by legislative intent that functions related to collective bargaining be placed in the hands of managerial representatives for the courts who are best able to assess and negotiate employee proposals.

Thus application of Act 195 to the judicial secretaries and judicial tipstaves does not implicate the separation of powers doctrine as no legislative intent to usurp powers of the judiciary is manifested. *Ellenbogen*. Instead, this Court should uphold the underlying purpose of Act 195 which is to promote fundamental fairness to public employees within the Commonwealth and their right to organize and bargain collectively. I would therefore grant respondents' motion for summary judgment as to judicial secretaries and judicial tipstaves as well, excluding however those judicial secretaries and judicial tipstaves in the employ of the president judge and the three administrative judges.

DOYLE, J., joins in this dissent.