COURT OF COMMON PLEAS OF ERIE COUNTY, PENNSYLVANIA (6th Judicial District), Juvenile Probation Department, Appellant,

v.

PENNSYLVANIA HUMAN RELATIONS COMMISSION and Gary Ison (Real Party in Interest).

Commonwealth Court of Pennsylvania.

Argued June 8, 1994.

Decided Dec. 21, 1994.

Kenneth D. Chestek, for appellant.

Diane Blancett–Maddock, Asst. Chief Counsel, for appellee.

Before DOYLE, COLINS, McGINLEY, PELLEGRINI, FRIEDMAN, KELLEY and NEWMAN, JJ.

KELLEY, Judge.

Gary Ison was employed as a juvenile probation officer for the Court of Common Pleas of Erie County (CCP). On February 7, 1992, Ison was discharged as a result of allegations that he used his position to seek sexual favors from the mother of one of his clients. Ison filed a complaint with the Pennsylvania Human Relations Commission (PHRC) alleging a violation of the Pennsylvania Human Relations Act (PHRA)[1] and seeking reinstatement. The complaint was served on the CCP.

The CCP filed with the PHRC a motion to dismiss for lack of jurisdiction. By order dated October 26, 1993, the PHRC denied the motion. By order dated November 23, 1993, the PHRC amended its prior order to state that the order involved a controlling question of law as to which there is substantial grounds for difference of opinion, and that an immediate appeal from the order may materially advance the ultimate termination of the matter. The CCP then filed

1. Act of October 27, 1955, P.L. 744, *as amended,* 43 P.S. §§ 951–963.

the present appeal which this court allowed under section 702(b) of the Judicial Code, 42 Pa.C.S. § 702(b), and Pa.R.A.P 1311.

The question on appeal, as presented by the CCP in its brief in the statement of the questions involved, is whether the PHRC has the power to overrule a decision of the CCP to discharge an employee.

The CCP argues that the doctrine of separation of powers permits it to hire and discharge personnel without interference from another branch of government, citing *Eshelman v. Commissioners of the County of Berks,* 62 Pa.Commonwealth Ct. 310, 436 A.2d 710 (1981), *aff'd per curiam sub nom., Eshelman v. American Federation of State, County and Municipal Employees, District Council 88, AFL–CIO,* 502 Pa. 430, 466 A.2d 1029 (1983). In *Eshelman,* this court held that a labor agreement which resulted from binding arbitration entered into by the county commissioners and a union representing court-appointed employees was void insofar as it attempted to regulate the discharge, demotion, suspension and discipline of the court-appointed employees. Our holding relied on the separation of powers doctrine and we stated that the collective bargaining process must not infringe upon the judges' authority to select, discharge, and supervise court personnel.

The PHRC responds by citing *County of Allegheny v. Wilcox,* 76 Pa.Commonwealth Ct. 584, 465 A.2d 47 (1983), in which a group of female employees with the Court of Common Pleas of Allegheny County filed a complaint under the PHRA claiming that their wages were substandard compared to male employees. This court upheld the PHRC order to upgrade the employees' pay, holding that the common pleas court was subject to the PHRA and that the PHRA order did not impair the functioning of the common pleas court and therefore did not violate the separation of powers doctrine.

■ The CCP points to the following language from *Wilcox* indicating that the holding is limited to the facts of that case and distinguishing the case from a case which relates to the power of a court to hire or fire employees:

> In United States v. Nixon ... the United States Supreme Court recognized that a branch of government alleging that it has been intruded upon by another in violation of the separation of powers doctrine must show how its authority has been encumbered ... And under the *facts of the case before us,* we do not believe that the Court of Common Pleas has carried its burden of establishing that the PHRA is unconstitutional. The Commission's order does not direct the Court of Common Pleas to hire anyone into confidential employee positions or to fire such an employee ... Rather, the Commission's order merely requires the *upgrading* or *equalization* of pay, and it is clear that the courts can compel the appropriate legislative body to appropriate sums which are reasonably necessary for their operation and administration ... We do not find, therefore, under the facts presented, any impairment of the independence or function of the Court of Common Pleas.

*Wilcox,* 76 Pa.Commonwealth Ct. at 592–93, 465 A.2d at 52 (citations omitted) (emphasis in original). We agree that the holding of *Wilcox* by its express language is limited to the facts of that case. The court made it clear that its holding should not be interpreted to mean that the PHRC would have jurisdiction over a case involving the hiring and firing of court employees. In fact, the language of the opinion implies that the PHRC would not have such jurisdiction.

■ The PHRC argues that the separation of powers doctrine prevents regulation of court employees by a state agency only if the employees are classified as confidential employees, such as a judge's personal staff. In support of this argument, the PHRC cites *Commonwealth ex rel. Gallas v. Pennsylvania Labor Relations Board,* 161 Pa.Commonwealth Ct. 97, 636 A.2d 253 (1993). In *Gallas,* this court decided whether certain classifications of court employees could be included in a collective bargaining unit pursuant to the Public Employe Relations Act (PERA).[2] Although the opinion addresses the question

**2.** Act of July 23, 1970, P.L. 563, 43 P.S. §§ 1101.101–1101.2301.

of whether the separation of powers doctrine prohibits the application of PERA to those employees, the opinion does not address the question of how the doctrine affects the authority of a court to hire and discharge employees. *Gallas* is therefore not controlling in the present case. We note that the language of the opinion distinguishing confidential and nonconfidential employees relates to a discussion of statutory language from PERA which explicitly excludes confidential employees from its coverage.

■ In support of its argument that employees must be confidential employees in order for the separation of powers doctrine to prevent their regulation by another branch of government, the PHRC points to the language from *Wilcox* quoted earlier, where the court, in limiting the holding to the facts of the case, noted that the PHRC order did not "direct the Court of Common Pleas to hire anyone into confidential employee positions or to fire such an employee." We note that the court in that case was not deciding the question of how the doctrine affects the power to hire and fire court employees. Moreover, the cases cited in the opinion immediately after the above-quoted sentence, *Ellenbogen v. County of Allegheny*, 479 Pa. 429, 388 A.2d 730 (1978), and *Beckert v. American Federation of State, County and Municipal Employees*, 56 Pa.Commonwealth Ct. 572, 425 A.2d 859 (1981), do not make a distinction between confidential and nonconfidential employees.

In *Ellenbogen*, the Supreme Court held that the Allegheny County Commissioners are the exclusive representatives of management in collective bargaining involving court employees paid from county funds. The court noted that its holding did not diminish the right of judges to hire, discharge and supervise court employees. The court stated that judicial authority over court personnel is an essential element of the judicial function.

In *Beckert*, this court granted an injunction preventing the Pennsylvania Labor Relations Board from exercising jurisdiction over an unfair labor practice charge regarding the discharge of a clerk employed by a district justice. We stated in our opinion that "the discharge of a judicial employee is a judicial power vested by our Constitution in the courts. That power may not, consistent with the constitutional doctrine of separation of powers, be policed, encroached upon, or diminished by another branch of government." *Id.* at 581, 425 A.2d at 862.

Based on all of the foregoing, we believe that the doctrine of separation of powers prohibits the PHRC from interfering with the judicial function of discharging personnel by exercising jurisdiction in this matter. Accordingly, we will reverse the order of the PHRC.

### ORDER

NOW, this 21st day of December, 1994, the order of the Pennsylvania Human Relations Commission, dated October 26, 1993, at No. E–62881–D, is reversed.

Due to the retirement of President Judge DAVID W. CRAIG prior to the final resolution of this matter, President Judge COLINS was substituted as a member of the en banc court, replacing Judge CRAIG.

DOYLE, Judge, dissenting.

I respectfully dissent from the majority's holding that the Pennsylvania Human Relations Commission (PHRC) does not have jurisdiction to consider a complaint filed by an employee of the judiciary challenging his or her discharge from employment on the grounds that it would violate the doctrine of the separation of powers.

The holding of the majority is without reservation, all inclusive, and so far-reaching that it permits no exceptions: "The Court [in *Wilcox*[1]] made it clear that its holding should not be interpreted to mean that the PHRC would have jurisdiction over a case

---

1. *County of Allegheny v. Wilcox*, 76 Pa.Commonwealth Ct. 584, 465 A.2d 47 (1983), *appeal dismissed as improvidently granted*, 507 Pa. 66, 488 A.2d 277 (1985).

involving the hiring and firing of court employees." (Majority op. at 4.) I disagree with this interpretation of *Wilcox.* Under the majority's view, so long as the complaint involved the hiring or firing of a court employee, regardless of the reason for his or her dismissal, that dismissal cannot be reviewed for illegality, on any grounds, by any forum except the court or through a judicial disciplinary proceeding. This means, using a base hypothetical, that if a male supervisor (or judge) in the judicial system fires a female employee (*e.g.,* a secretary or law clerk) for refusing his sexual advances, that the PHRC cannot investigate the matter, nor address the grievance, because it has no jurisdiction. I think that is wrong, clearly wrong, and to hold that the PHRC has no jurisdiction *regardless of the reasons asserted for the discharge* is a distortion of the doctrine of the separation of powers. Merely disciplining an errant judge does not at all fully compensate a mistreated employee fired or discriminated against; any subsequent discipline against the errant judge does not at all make the employee whole.

In *Wilcox,* employees of the Court of Common Pleas of Allegheny County who were female secretaries working for district justices filed a claim with the PHRC asserting that they were paid less than male night clerks who performed similar duties. After a hearing, the PHRC found in favor of the secretaries and ordered the court to increase the secretaries' salaries and to provide the secretaries with backpay. On appeal, this Court affirmed holding, *inter alia,* that the separation of powers doctrine did not prevent the PHRC from adjudicating a sex discrimination claim against the Court of Common Pleas of Allegheny County. We determined that the PHRC adjudication did not impinge on the judiciary's independence for two reasons: (1) the PHRC's order merely directed the court to upgrade and equalize the secre-

taries' pay; and (2) the PHRC did not require the court to hire or fire *a confidential employee.*

Further, I disagree with Judge Pellegrini's dissenting opinion that any complaint which requires an administrative agency to inquire into the reasons underlying a judge's personnel decision, must be dismissed, for the same reasons which prompt my disagreement with the majority.

When a person becomes an employee of a court, he or she does not forfeit his or her right to be protected under the statutes adopted by the General Assembly and signed by the Governor which have been enacted to protect employees in this Commonwealth.[2] *See Commonwealth ex rel. Gallas v. Pennsylvania Labor Relations Board,* 161 Pa.Commonwealth Ct. 97, 636 A.2d 253 (1993) (court employees who were court reporters, interpreters, general tipstaffs, and administrative secretaries may be included in a collective bargaining unit).

Accordingly, I dissent from the majority and would affirm the order of the Pennsylvania Human Relations Commission.

PELLEGRINI, Judge, dissenting.

I respectfully dissent. The issue before us is whether the Pennsylvania Human Relations Commission (Commission) properly denied the Court of Common Pleas of Erie County's motion to dismiss a discrimination complaint filed against it by Gary Ison (Ison). Ison was employed by the Court of Common Pleas as a probation officer and, in his complaint, contended that he was dismissed because of his race in violation of Section 3 of the Pennsylvania Human Relations Act (Act)[1] and not because of his alleged solicitation of sexual favors from the mother of one of his probationers. The majority reverses the Commission's denial of the motion to

---

**2.** I note that in *Forrester v. White,* 484 U.S. 219 (1988), the United States Supreme Court held that a discharged probation officer could successfully challenge her dismissal by a state court judge on grounds of sexual discrimination under 42 U.S.C. § 1983.

**1.** Act of July 23, 1970, P.L. 563, 43 P.S. § 1101.301(13).

dismiss, holding that the Commission lacks jurisdiction over the complaint because allowing the Commission, an executive agency, to review the decision to discharge Ison, violates the doctrine of separation of powers embodied in Article V, Section 1 of the Pennsylvania Constitution.[2] The Commission agrees that they have no jurisdiction over "confidential" employees of judges, i.e., those who are on the judges' personal staff. *See Commonwealth ex. rel. Gallas v. Pennsylvania Labor Relations Board,* 161 Pa.Commonwealth Ct. 97, 636 A.2d 253 (1993).

Under the Constitution, the courts of this Commonwealth have "certain inherent rights and powers to do all such things as are reasonably necessary for the administration of justice." *Sweet v. Pennsylvania Labor Relations Board,* 457 Pa. 456, 462, 322 A.2d 362, 365 (1974).[3] The doctrine of separation of powers mandates that these powers of the judiciary not be encroached upon, policed or diminished by another branch of government. *See Commonwealth ex. rel. Gallas v. Pennsylvania Labor Relations Board,* 161 Pa.Commonwealth Ct. 97, 113, 636 A.2d 253, 261 (1993). A branch of government, including the judiciary, alleging that it has been intruded upon by another in violation of the separation of powers doctrine, must show how its authority has been encumbered. *County of Allegheny v. Wilcox,* 76 Pa.Commonwealth Ct. 584, 592–93, 465 A.2d 47, 52 (1983) (citing *United States v. Nixon,* 418 U.S. 683, 94 S.Ct. 3090 (1974)).

For an administrative agency such as the Commission to inquire into a judge's motivation or any personnel action he or she takes involving an employee violates the separation of powers because it would unduly encumber the independence of the judiciary which has its own constitutionally mandated procedures to discipline judges. If a judge has committed an act that amounts to a violation of the law, the tribunal with the sole jurisdiction to adjudicate that conduct is the Court of Judicial Discipline as implemented by the recent amendments to Article V, Section 18(b) of the Pennsylvania Constitution. To hold that the Commission would have jurisdiction would mean that an "executive agency" would be able to judge judges, a result prohibited by the doctrine of separation of powers and impinging on the jurisdiction of the Court of Judicial Discipline.

Just because a person is an employee of the "judiciary" does not mean that we should not allow the Commission to exercise jurisdiction. There are numerous individuals who work for the "court"—probation officers, counselors, clerks, data processors—who support the work of the courts but have no professional contact with any judge. While not disagreeing that if it were to hear complaints involving confidential employees that would violate the separation of powers doctrine, the Commission argues that if it had jurisdiction over complaints filed with it by all non-confidential employees such as those mentioned previously, the doctrine would not be violated because the exercise of such jurisdiction would have no impact on core judicial functions.

---

2. Article V, Section 1 provides:
   The judicial power of the Commonwealth shall be vested in a unified judicial system....

3. [T]he term "inherent powers" has been employed in three general fashions. The first ... use of inherent powers, which might be termed irreducible inherent authority, encompasses an extremely narrow range of authority involving activity so fundamental to the essence of a court as a constitutional tribunal that to divest the court of absolute command within this sphere is really to render practically meaningless the terms 'court' and 'judicial power'.... The second and most common use of the term 'inherent power' encompasses those powers sometimes said to arise from the nature of the court, ... but more often thought to be the powers 'necessary to the exercise of all others.' Here courts are referring to powers implied from strict functional necessity.... Historically, [the Supreme Court] has viewed this particular power as 'essential to the administration of justice,' and absolutely essential for the functioning of the judiciary.... The third form of authority subsumed under the general term inherent power implicates powers necessary only in the practical sense of being useful ... in the pursuit of a just result. *Eash v. Riggens Trucking, Inc.,* 757 F.2d 557, 562–63 (3rd Cir.1985) (citations omitted). *See also* Felix F. Stumpf, *Inherent Powers of the Courts, Sword and Shield of the Judiciary* (The National Judicial College 1994).

I believe the balancing test we employed in *Gallas* is useful. In *Gallas,* we held that application of the Pennsylvania Employee Relations Act (Act 195) to certain judicial employees was constitutional because its exemption of "confidential employees"[4] from the collective bargaining process avoided a separation of powers violation. Because of judicial secretaries' and judicial tipstaves' access to the individual judges' private chambers and personal files, the fact that they were accountable to, rewarded, sanctioned or disciplined by that judge and each individual judge had an unlimited prerogative to hire or fire them,[5] we held that judicial secretaries and judicial tipstaves were confidential employees and, thus, could not be included in the bargaining unit. The other employees not accountable to, hired or fired by the judges could be included in the collective bargaining unit, because review by the Pennsylvania Labor Relations Board of an employment action regarding these employees would not involve reviewing the judges' decisions about their personal staff. Exempting confidential employees from collective bargaining maintained the balance between the right of public employees to be represented and engaged in collective bargaining and the preservation of the independence of the judiciary. *Gallas* at 114, 636 A.2d at 262; *see also Wilcox* (holding that review of salary differentials between female district justice secretaries and male district justice night clerks by the Commission was not a violation of separation of powers, because an order requiring equalization of pay scales did not direct the Court of Common Pleas to hire anyone into a confidential employee position or to fire such an employee).

Employing the *Gallas* balancing test, I believe the Commission's suggestion that only confidential employees are the ones we have jurisdiction over is much too narrow. While we only excised "confidential employees" from unionization, the consideration is different in a complaint brought before the Commission. The former involves a collective bargaining scheme while the latter involves judges whose conduct is unlawful under the act. If an employee is not "confidential" but a judge directly takes a personnel action against that employee, then the Commission would again be in the position to judge a judge's conduct. Because that would affect the independence of the judiciary, I believe that allowing the Commission to hear complaints against judges, even though they may involve non-confidential employees, is constitutionally inappropriate.

However, again employing the *Gallas* balancing test, I would allow the Commission to hear a complaint brought by a court employee involving a personnel action by his or her non-judge supervisor or co-worker. When a judge has taken no action against an employee other than to ministerially approve a personnel action taken by that employee's supervisor, there is no impingement on judicial power when the Commission reviews an allegation that a judicial employee other than a judge unlawfully discriminated against that employee. Moreover, auguring in favor of allowing the Commission to hear complaints is that courts have not implemented a procedure to hear those complaints involving unlawful discrimination by court employees other than judges. Just as in *Gallas,* we balanced the interests of employees to organize with the independence of the judiciary, the framework set forth here takes into consideration the rights of employees not to be unlawfully discriminated against but preserves the core functions of the judiciary from administrative intrusion.

To make clear my proposed holding that a judge's conduct cannot be reviewed by an administrative agency and to avoid administrative creep—if it is necessary to inquire into the motivation, thought process, conduct or any action of a judge, I would hold any

4. Section 4(b) of the Act of October 27, 1955, P.L. 744, *as amended,* 43 P.S. § 954(b).

5. Section 2301(a)(1) of the Judicial Code, 42 Pa.C.S. § 2301(a)(1), provides:

Judges and district justice may appoint and fix the duties of necessary personal staff.

\*    \*    \*    \*    \*    \*

complaint brought before the Commission triggering such review must be dismissed. Moreover, the Commission has no jurisdiction to order discovery from a judge or question any party regarding a judge's conduct. Otherwise, separation of powers is implicated and the method of relief available to an employee alleging discrimination is the Court of Judicial Discipline. However, just as we permitted non-confidential employees to be unionized in *Gallas*, we will permit the Commission to hear complaints of unlawful discrimination by non-judge judiciary managers and employees or the result of non-judge policies.

Here, Ison has asserted his right to be free from discrimination in employment on the basis of race pursuant to Section 3 of the Act, 43 P.S. § 953. Nothing in the complaint implicates the conduct of any judge. In the motion to dismiss before us, as the Commission points out, no evidence has been presented regarding whether probation officers are under the direct supervision of the judges of the common pleas court or that one of its judges was directly involved in the decision to discharge Ison.

Accordingly, I would affirm the order of the Commission denying the Court of Common Pleas' motion to dismiss.

FRIEDMAN, Judge, dissenting.

In his dissent, Judge Pellegrini proposes that where any complaint brought before the Pennsylvania Human Relations Commission (Commission) necessitates inquiry into the motivation, thought process, conduct or action of a judge, the Commission must dismiss the complaint for lack of jurisdiction, reasoning that to hold otherwise would allow an "executive agency" to judge judges in violation of the separation of powers doctrine. Judge Pellegrini maintains that in those cases where the direct action of a judge is at

issue, the only method of relief available to an employee alleging discrimination is the Court of Judicial Discipline—the tribunal with the sole jurisdiction to adjudicate the conduct of judges and to discipline judges who have violated the law. On the other hand, Judge Pellegrini concludes that "there is no impingement on judicial power when the Commission reviews an allegation that a judicial employee, *other than a judge*, unlawfully discriminated against that employee." (Dissenting op. at 7.) (Emphasis added.) The dissent believes that this framework "takes into consideration the rights of employees not to be unlawfully discriminated against but preserves the core functions of the judiciary from administrative intrusion." (Dissenting op. at 7.)

I concur with the result reached by Judge Pellegrini in his dissent and agree that because Gary Ison's allegation of unlawful discrimination involves a personnel action taken by a judicial employee other than a judge, the Commission has jurisdiction to hear Ison's complaint.[1] However, I write separately because although I would agree that the framework espoused by the dissent "considers" the constitutional rights of employees, I am concerned that those rights may not always be fully protected under this approach. The problem, which, admittedly, is not an issue here, arises where an employee directly implicates the conduct of a judge in seeking relief from unlawful discrimination.

The Court of Judicial Discipline, although providing a forum to consider a judge's discriminatory behavior, can provide no actual relief to a party who has lost his job as a result of a judge's unlawful discrimination. After the filing of formal charges, the powers of the Court of Judicial Discipline are limited to determining whether a sanction should be imposed against the justice, judge or justice of the peace who has been charged. Where discipline is appropriate, the Court of Judi-

---

1. I believe that the judiciary must be free to exercise its power to hire and discharge personnel without interference from any other branch of government. Accordingly, I also agree with Judge Pellegrini's dissent to the extent that it eliminates the distinction between confidential and non-confidential employees and recognizes that it is constitutionally inappropriate for the Commission to review a judge's personnel decisions, even where those decisions involve non-confidential employees.

cial Discipline can order a judge's removal from office, suspension or censure, (Article V, Section 18(b)(5)); however, it cannot order reinstatement of the injured party, or provide other appropriate compensation, where the judge's discriminatory action has cost the employee his job. By contrast, if the Commission determines that a court employee's dismissal violated the Pennsylvania Human Relations Act, Act of October 27, 1955, P.L. 744, *as amended,* 43 P.S. §§ 951–963, the Commission can, among other things, order that employee reinstated to his position. 43 P.S. § 959(f).

Thus, a court employee who was discharged because of a non-judge's unlawful discrimination may be reinstated by order of the Commission, whereas a person who loses his job because of the discriminatory practices of a judge is denied the same relief. I cannot accept that, under the guise of separation of powers, any person should be denied his constitutional right not to be discriminated against in employment. Beyond an adjudication against the judge by the Court of Judicial Discipline, I believe that an employee has a right to reinstatement or other appropriate relief when he has been deprived of his livelihood as the target of a judge's unlawful discrimination. Because currently there does not appear to be a court implemented procedure that would both consider *and* protect this right, I feel that the legislature needs to address this potential problem.