**CITIZEN POLICE REVIEW BOARD OF the CITY OF PITTSBURGH, Appellant,**

**v.**

**Thomas MURPHY in His Capacity as Mayor of the City of Pittsburgh, Robert W. McNeilly, in His Capacity as Chief of Police of the City of Pittsburgh and the Fraternal Order of Police, Ft. Pitt Lodge No. 1.**

Commonwealth Court of Pennsylvania.

Argued Feb. 4, 2003.

Decided March 25, 2003.

---

Frederick W. Thieman, Pittsburgh, for appellant.

Bryan Campbell, Pittsburgh, for appellee, Fraternal Order of Police.

George R. Specter, Pittsburgh, for appellees, Murphy and McNeilly.

BEFORE: COLINS, President Judge, LEAVITT, Judge and FLAHERTY, Senior Judge.

OPINION BY President Judge COLINS.

The Citizen Police Review Board (CPRB) of the City of Pittsburgh (City) appeals from the July 17, 2002 order of the Court of Common Pleas of Allegheny County (Trial Court), dismissing with prejudice a complaint in mandamus and for declaratory relief filed by the CPRB against Thomas Murphy, in his capacity as Mayor of the City of Pittsburgh, against Robert McNeilly, in his capacity as Chief of Police of the City of Pittsburgh, and against the Fraternal Order of Police, Ft. Pitt Lodge No. 1(FOP), the official bargaining representative for City of Pittsburgh police officers.

The following factual developments led to the present appeal. The Citizen Police Review Board (CPRB) was established pursuant to Sections 228 230 of the City of Pittsburgh Home Rule Charter to function as an independent board of citizens to investigate and recommend appropriate action on complaints of police misconduct. Ordinance Number 29–1997, effective as of August 15, 1997, addresses the composition of the CPRB, the enabling legislation creating it, and a declaration of its underlying policy. Pursuant to this ordinance, the CPRB is permitted to institute a preliminary inquiry about an incident of alleged police misconduct when a citizen files a sworn complaint or when the CPRB itself initiates an investigation. Alternatively, the City investigates complaints of police misconduct through the Office of Municipal Investigations (OMI), which is part of the City of Pittsburgh law department. The OMI investigates allegations of City employee misconduct (including police misconduct) and reports the findings to the appropriate City department official. Each sworn citizen complaint received by the CPRB is referred to OMI, and in such cases the matter is investigated by both the CPRB and OMI.

OMI findings as to police misconduct become part of the subject police officer's confidential personnel file and are considered for disciplinary, transfer, reassignment, promotion, counseling, and retraining purposes. The record also indicates that OMI investigations of alleged police misconduct involve an interview with the accused police officer or officers, or with police officers who are witnesses to the subject incident, at the outset of which the latter are advised whether the allegations are of a criminal nature or only part of an internal administrative investigation. The record further indicates that in approximately 70% of these interviews, the OMI investigator conducting the interview, after giving warnings where appropriate, such as those set forth in *Garrity v. New Jersey*, 385 U.S. 493, 87 S.Ct. 616, 17 L.Ed.2d 562 (1967),[1] extracts a statement from the

---

1. *Garrity v. New Jersey* pertains to state-con- ducted investigations of police officers for al-

accused police officer by threat of disciplinary action under the supervision of the Chief of Police. In approximately 30% of the interviews of accused police officers, no *Garrity* warning is given.

In pursuing its investigations, the CPRB is required to conduct public hearings, adversarial in nature, usually before a three-member CPRB panel. Frequently at these hearings, Pittsburgh police officers are asked to provide sworn testimony. Of relevance in this regard is the FOP's advice to Pittsburgh police officers that pursuant to the collective bargaining agreement between the City of Pittsburgh and the FOP, the OMI is the official entity charged with investigating police misconduct even though the CPRB may also conduct comparable investigations. The record further indicates that customarily, the FOP advises its officers that pursuant to Section 21 of the collective bargaining agreement, any statements given by officers to OMI are subject to contractual rights not applicable to an officer in CPRB hearings, and that the ultimate decision of whether to testify before the CPRB is left to the officer.

On or about November 13, 2000, the CPRB filed a complaint and subsequently on or about December 26, 2000, an amended complaint, seeking a writ of mandamus and declaratory relief against Pittsburgh's Mayor and Chief of Police, and against the Fraternal Order of Police, Ft. Pitt Lodge

No. 1. The action sought to compel the Mayor and the Chief of Police to direct individual police officers to cooperate with the CPRB by giving interviews and testimony, under threat of discipline, in any matter in which the Mayor and Chief of Police order the police officer to cooperate with the OMI. The record indicates that in OMI investigations, where police officers have been forced to give statements under threat of disciplinary action, most have consented to cooperate with the investigation by being interviewed or, before 1997, by giving written statements to OMI.

After the institution of the CPRB's action, the City of Pittsburgh and the FOP entered into a new two-year contract effective January 1, 2001 (hereinafter referred to as the "Working Agreement"), in which certain issues still in dispute between the parties were submitted to a panel of arbitrators. The CPRB was not a party to these negotiations. The arbitration panel, on November 30, 2000, issued an award modifying the Working Agreement, specifically, Section 12 of the award, which provides: "Section 21 of the Agreement shall be amended to provide that no police officers shall be compelled by the City to testify before the Police Civilian Review Board." No prior agreement between the City and the FOP had contained any reference to the CPRB.

Preliminary objections to the CPRB's amended complaint were filed by all defen-

---

legedly fixing traffic tickets. Under a New Jersey forfeiture-of-office statute, each police officer, prior to being questioned, was warned that what they said could be used against them, and that if they refused to answer on the grounds that it would incriminate them, they would be terminated pursuant to N.J.Rev.Stat. § 2A: 81–17.1 (Supp.1965). The subject police officers responded to the questions, but their answers were used to convict them on criminal charges. The police officers appealed to the United States Supreme Court, which reversed their convic-

tions on the grounds that their responses were coerced and made under duress after having been given the choice of selecting either self-incrimination or discharge from their jobs. The Supreme Court held that the police officers, as every other citizen, were entitled to the safeguards of the Fourteenth and Fifth Amendments of the United States Constitution precluding any incriminating statements extracted from them pursuant to N.J.Rev.Stat. § 2A:81–17 from being used in any future criminal proceeding.

dants and were overruled by the trial court. By order of the trial court on March 15, 2002, the pleadings in this matter were closed. On April 29, 2002, the FOP filed a motion for summary judgment, and on April 30, 2002, the CPRB filed a cross-motion for summary judgment; both motions were responded to by the opposing parties.

Before the trial court, the CPRB argued that the issue in this case centers around whether the City's duty to cooperate with the CPRB includes the administration of warnings such as those set forth in *Garrity*. The CPRB also argued that the amendment of Section 21 of the Working Agreement should be declared void as against public policy because it directly contravenes the public policy expressed in the referendum creating the CPRB. The CPRB also contended that the word "testify" should not be interpreted to prohibit the CPRB from holding *Garrity* hearings as opposed to hearings under oath. Finally, the CPRB argued that it should be deemed a "lawfully authorized agent of official City business" and as such, should be a party to negotiations with the FOP.

The Trial Court noted that the parties to this action have agreed that in certain circumstances, pursuant to Charter Sections 201 and 204, the Mayor has the authority to compel statements (subject to *Garrity* warnings), from City of Pittsburgh employees under threat of disciplinary action, including termination. The Trial Court further noted that these compulsory statements are deemed to be the product of coercion and therefore they, and their fruits, are inadmissible in criminal proceedings but admissible in an internal disciplinary action or civil proceeding.

By order and opinion dated July 17, 2002, the Trial Court dismissed the CPRB's complaint with prejudice. This appeal followed.

On appeal, the CPRB argues that: (1) the Trial Court erred in dismissing its action because although the Mayor and Chief of Police routinely require police officers to cooperate with OMI investigations, they frequently refuse to order police officers to cooperate with parallel CPRB investigations under threat of discipline, notwithstanding what it avers to be the unarguable duty to cooperate found in the enabling ordinance signed by the Mayor; (2) because the duty to cooperate with parallel CPRB investigations is clear and non-delegable, and because there is no other sufficient remedy that would ensure the viability of the CPRB, the latter has no choice but to file a mandamus action to compel the Mayor and Chief of Police to comply with the duty of cooperation, and to obtain a ruling that the Working Agreement as amended is null and void insofar as it purports to limit cooperation with the CPRB; (3) the Trial Court erred in suggesting that the CPRB could still use its subpoena power and ignored the fact that subpoena power can demand only attendance, which is no substitute for an interview or testimony; (4) the Trial Court erred in failing to recognize that the CPRB asked solely for an order stating that when the Mayor and Chief of Police exercise their discretion to issue a *Garrity* warning in an OMI investigation, that discretion applies with equivalent force to the CPRB's parallel investigation as required by the duty to cooperate; and (5) the Trial Court erred in failing to issue the declaratory judgment sought by the CPRB, because the arbitration panel erroneously ruled that the City cannot compel police to testify before the CPRB, and since, in any event, the arbitration ruling does not prohibit requiring police to grant interviews to the CPRB (as opposed to testifying) under threat of discipline.

■■■ Upon review, we concur with the Trial Court's dismissal of the CPRB's complaint for relief in mandamus and for a declaratory judgment. In reaching its determination, the Trial Court restated the well-established principle,

> A writ of mandamus is an extraordinary remedy which compels the performance of a ministerial act or mandatory duty. A ministerial act is "one which a public officer is required to perform upon a given state of facts and in a prescribed manner in obedience to the mandate of legal authority." A writ of mandamus may be issued only where there is a clear legal right in the plaintiff, a corresponding duty in the defendant, and a want of any other appropriate and adequate remedy.

*Deputy Sheriff's Association v. County of Allegheny,* 730 A.2d 1065, 1067–68 (Pa. Cmwlth.), *petition for allowance of appeal denied,* 560 Pa. 711, 743 A.2d 923 (1999) (citations omitted). Here, we agree with the Trial Court that the CPRB has failed to prove that it is entitled to a writ of mandamus since it cannot cite any legislative authority that gives it a clear legal right to order the Mayor and/or the Chief of Police to compel a police officer to testify or that imposes a clear legal duty upon the latter to comply. Any disciplinary action undertaken by the Mayor and/or Chief of Police with regard to a police officer's willingness or unwillingness to testify before the CPRB is, pursuant to the enabling legislation, discretionary, and not a ministerial duty. Analogous issues arose in *Deputy Sheriff's Association,* where this Court stated:

> Here, the decision to implement the Program by the Commissioners was discretionary and not a ministerial act. Moreover, the Sheriff's decision not to participate in the Program was a policy decision and not a ministerial act, ... and the Commissioners have no authority to direct the Sheriff to make hiring, supervisory or discharge decisions. *Pennsylvania Labor Relations Board v. Della Vecchia,* 517 Pa. 349, 537 A.2d 805 (1988). In addition, the Appellants cannot point to any authority which establishes their right to participate in the Program. There is also no legal duty mandating Commissioners to offer such a program or requiring [the] Sheriff to participate in such a program.

*Id.* at 1068. Similarly, in the present matter, the CPRB, by asking the courts for a writ of mandamus giving it additional authority not specifically granted to it by statute, is trying to acquire through court order, powers not granted to it by legislative enactment. In this respect, the CPRB's action is inconsistent with the Pittsburgh Code § 661.03(e), codifying Ordinance 29–1997, effective 8–15–97, which, in referring to the legislation creating the CPRB, states:

> This legislation is not intended to violate the right against self-incrimination of any individual, in particular police, nor is this legislation intended to violate any other rights of individuals protected under the Constitutions and laws of the Commonwealth of Pennsylvania and the United States of America. This legislation shall be interpreted consistent with this principle.

■■■ We further find that the Trial Court did not err in rejecting CPRB's contention that the amendment to Section 21 of the Agreement providing that no police officers shall be compelled by the City to testify before the CPRB, should be deemed void as contravening the public policy underlying the creation of the CPRB. As the Trial Court properly noted, the amendment to Section 21 of the Agreement in no way undermines the CPRB's present authority to obtain OMI files and other documentary material pertaining to police misconduct allegations, as well as to

subpoena police officers to testify at public hearings. Additionally, we concur with the Trial Court's dismissal of the CPRB's argument that it should be considered a "lawfully authorized agent of official City business" and as such, be a party to negotiations with the FOP. As the Trial Court correctly observed, the CPRB proffers no authority that would warrant considering it to be an agent of the City, nor an employer within the meaning of Act 111.[2]

 Finally, we conclude that the Trial Court did not err in determining that the CPRB failed to meet the burden for granting declaratory relief. It is well established that

> declaratory judgment relief requires the presence of antagonistic claims indicating imminent and inevitable litigation coupled with a clear manifestation that the declaration will be of practical help in ending the controversy. This relief cannot be used in anticipation of events that may never occur or for rendering an advisory opinion that may prove to be purely academic; there must be a real controversy. Finally, the grant of a declaratory judgment is not a matter of right, but a matter of the court's discretion.

*South Middleton Township v. Diehl,* 694 A.2d 11, 13 (Pa.Cmwlth.1997). In the present matter, the CPRB has not submitted any specific, current controversy in which police officers who are subjected to an OMI investigation of police misconduct refuse to testify in a corresponding CPRB investigation. Essentially, the action brought by the CPRB simply speculates that officers may refuse to testify at some point in the future, which speculative events cannot support the grant of declaratory relief.

**2.** Act of June 24, 1968, P.L. 237, *as amended,*

Accordingly, based upon the foregoing discussion, the order of the Trial Court dismissing the CPRB's action is affirmed.

### *ORDER*

AND NOW, this 25th day of March 2003, the order of the Court of Common Pleas of Allegheny County in the above-captioned matter is affirmed.